[No. 1217.]

## THE STATE OF NEVADA, RESPONDENT, *v.* JOHN MAYNARD, APPELLANT.

CRIMINAL LAW—RIGHTS OF DEFENDANT AS A WITNESS—CONSIDERATION OF HIS TESTIMONY.—The defendant in a criminal case has a right to have the jury consider declarations in his favor made by him at the trial, when a witness, in connection with his actions and words at the time of the commission of the alleged offense.

IDEM—EVIDENCE—TESTIMONY OF DEFENDANT—CONCLUSIONS FROM HIS ACTS —INTENT—INSTRUCTIONS.—It cannot be said as a fact in every case, or as a rule of law in any, that if a defendant's actions, when considered by themselves alone, are inconsistent with the declared intent, it is safer to draw a conclusion from his actions than from his sworn statement as a witness.

APPEAL from the District Court of the Sixth Judicial District, Eureka County.

The facts are stated in the opinion.

*J. T. Baker*, for Appellant:

The court erred in assuming questions of fact as to the acts and testimony of defendant. (Hayne on N. T. 341, sec. 121, subd. 4.)

*W. H. Davenport*, Attorney General, and *H. F. Bartine*, for Respondent:

The instructions of the court as to the weight to be given to the testimony of defendant may be open to criticism, but there is no assumption of disputed facts. The taking was admitted, and the language objected to can scarcely be deemed error. The court has the right to point out the distinction between different kinds of testimony. It is also proper to caution the jury against giving too ready credence to the testimony of a defendant. (*State* v. *Hing*, 16 Nev. 310.) The actions of a defendant are a safer guide to the judgment than his subsequent declarations in his own favor, and the defendant was not prejudiced by the instruction.

By the Court, LEONARD, J.:

Appellant was convicted of the crime of grand larceny. Witnesses for the state testified to the following facts: The alleged larceny was in a saloon in Eureka, where there was, at the time, quite a crowd of people, and much drinking. A man by the name of Brayman, when intoxicated, changed a certificate of deposit with the saloon-keeper, for money, receiving in exchange gold and silver and a fifty-dollar greenback. When the money was being counted out by the saloon-keeper, defendant went up to the bar where Brayman was standing, and put his arm on the latter's shoulder. The saloon-keeper

told him to stand back, when defendant moved to the other side of Brayman. No witness saw defendant take any money from the counter. In a few minutes after the certificate was changed, the fifty-dollar greenback was missing, when the saloon and bar keeper instituted a search for the same. They locked the front door, so that no one could go out. During the search, when defendant was sitting in the back room, Edward Burns told the saloon-keeper that he saw defendant put something in his boot; whereupon the saloon-keeper went to defendant and told him to give up the greenback. Defendant asked to whom the bill belonged. The saloon-keeper replied that that made no difference, and in a positive manner told him to give it up. Defendant refused, when the saloon-keeper told him they had searched the balance in the house, and would search him; that he had the bill in his right boot. When asked to give up the bill, defendant denied having it, and asked if they thought he was a thief. He wanted to fight because he was requested to give it up. He sprang to his feet, threw off his coat and hat, and told the saloon and bar keeper to search him. He pulled off his left boot first. He was then told to pull off his right boot. He objected to doing so, saying his right ankle was sore. Finally he pulled off his right boot, and the fifty-dollar bill received by Brayman from the saloon-keeper dropped on the floor.

Burns testified that he was standing a short distance from the bar, talking with defendant, when the saloon-keeper was changing the certificate of deposit; that defendant went to the bar and stood by Brayman's side; that shortly afterwards the bill was missing, and several persons began to look for it on the floor, the defendant assisting in the search; that about the same time defendant went into the back part of the room and put something into his right boot; that he then told the saloon-keeper that defendant had the bill.

The defendant testified in his own behalf, in substance, as follows: He had been drinking. He saw the greenback lying on the floor. He knew it was money, but did not know the denomination of the bill, or the person to whom it belonged. When he picked it up he thought he would take it and wait until he found out who owned it. He had no intention of stealing the bill when he picked it up, and at no time intended to keep it, when it was claimed by the loser. He did not know

that it belonged to the saloon or bar keeper, and wanted to know the true owner before he would give it up. He did not give up the bill when it was demanded of him because he did not know the owner. The reason why he put the bill in his boot was, that when he was drinking he usually put his money in his boot; and, besides he had no pocket that was whole. He could easily have left the saloon before he was accused of stealing, if he had intended to keep the bill from the owner. He would have given up the bill at first if the saloon and bar keeper had asked him for it in a gentlemanly manner; but by their violent conduct they made him mad, and he refused to give them any satisfaction. He expected the owner would claim it, when he intended to give it up.

The court instructed the jury that, under the statute of the state, the defendant had a right to testify in his own behalf, and no inference of guilt was to be drawn against him because he was placed on trial charged with a public offense; that the law presumes every one to be innocent until he is proven guilty beyond a reasonable doubt; that if defendant picked up the bill not knowing who was the owner thereof, and at the time had no intention of stealing the same, the fact that he secreted it after finding it did not constitute the crime of grand, or any, larceny; that if the defendant did not intend to steal the bill when he took it, the jury should find him not guilty.

At the request of the state, the court instructed the jury as follows: " In order to constitute the crime of grand larceny, the taking must have been with a felonious intent. There can be no positive or direct proof of criminal extent, except by confession. Intent can be established only as the natural and logical deduction from acts and declarations. Every person is presumed to intend the natural consequences of his actions. *The actions of the defendant are a safer foundation from which to draw a conclusion as to his intention at the time of the alleged taking than any subsequent declarations in his own favor.* And if you believe from the facts which you think have been established, that the natural and logical deduction is, that the taking was with criminal intent, then I instruct you that such proof of the intent (if you find there has been such proof) is as binding upon you, and entitled to the same force, as if the evidence of criminal intent had been direct and positive."

It is claimed by counsel for appellant that the italicized por-

tion of this instruction, especially, is erroneous and prejudicial to the defendant. The defendant had a right to testify as to his intent, and make any explanation of what he did and said at the time of the alleged larceny. Before the enactment of the statute allowing defendants in criminal cases to testify in their own behalf, the only method of ascertaining the intent was by inference from their words and acts; but now, if the defendant testifies, the jury may and should ascertain it by a careful examination of his acts and words at the time of the commission of the alleged crime, and his testimony at the trial. He has a right to have the jury consider declarations in his favor, made by him at the trial, when a witness, in connection with his acts and words at the time of the commission of the alleged offense. He has a right to explain his acts and sayings, and declare his intent; and the jury have no right to draw their conclusion as to his intention from previous acts and declarations alone, excluding his testimony from consideration. If defendant's declared intent was inconsistent with his acts at the time of the alleged larceny, the jury were at liberty to discard it as false; and it was their duty to do so, if, from all the evidence, including "declarations in his own favor" made at the trial, they believed, beyond a reasonable doubt, that at the time defendant picked up the bill he intended to steal it.

It is true the court did not instruct the jury to disregard defendant's declarations, or testimony in his own favor, in deciding upon his intent at the time of the alleged larceny; but they were advised that they would be less liable to err, if they should draw their conclusions from his actions, rather than from any subsequent declarations in his own favor; or, in other words, from his testimony favorable to himself. In our opinion, the court, in effect, advised the jury to disregard the testimony of defendant favorable to himself, if it was inconsistent with the natural and logical deductions from his acts. This instruction did not refer, in general terms, to the comparative value, as evidence, of acts accompanying the commission of an alleged offense and subsequent exculpatory testimony of the defendant given at the trial; but it advised the jury that, in the case then being tried, the actions of the defendant were a safer foundation from which to draw a conclusion as to his intention at the time of the alleged stealing than any subsequent declaration in his favor. In other words, the jury were told, as a rule of law,

that they might more safely conclude that the defendant had forsworn himself in testifying as to his intention than that they would be led astray by adopting the natural and logical deduction from his acts; that they would be less liable to draw unjust conclusions from his actions than from his sworn testimony in his own favor.

The defendant knew whether he intended, in fact, to steal the bill. He swore he did not, and if his testimony was true he was not guilty of the offense charged. He had a right to have the jury say, from the entire evidence, from all the facts and circumstances, including his own testimony, what his intention was, without any expressed opinion of the court in respect to matters of fact. The rule laid down by the court is opposed to the evident intent of the statute allowing persons charged with crime to testify in their own behalf, and, in effect, reinstates the common-law rule that actions must speak for themselves, and the intention must be inferred alone from the acts and words of the accused. If, in ascertaining the intent, the jury may be charged that the defendant's sworn statement is a more imperfect guide to the truth than his acts, why allow him to testify at all as to his intentions? If we admit that, in most cases, at least, juries should and will disregard as false the motive or intent assigned, if it is inconsistent with the external circumstances, still the charge under consideration is wrong. It cannot be said as a fact in every case, or as a rule of law in any, that if a defendant's actions, when considered by themselves alone, are inconsistent with his declared intent, it is safer to draw a conclusion from his actions than from his sworn statement as a witness. Such a charge is a decision upon a question of fact. It is a declaration that certain evidence tending to prove a material fact is more valuable in ascertaining the truth, because safer to follow, than is certain other evidence that would disprove the former, if it should be believed by the jury. Although the situation of defendants in criminal cases may be such, in many instances, as to induce them to testify falsely, still they may speak the truth; and they have the right to ask the jury to believe their sworn statements, although they may be inconsistent with their actions. It was for the jury to consider both sources of information.

Suppose A, having a large sum of money on his person,

gets drunk, and is in danger of squandering it. He lays it down, and B, his friend, for the sole purpose of saving it for him, takes it and carries it home, intending to return it when A gets sober. A misses the money, and meeting B accuses him of having taken it, and demands that it be given back. B, finding A still intoxicated, denies having it, or having taken it. C, who saw B take the money, causes the latter's immediate .arrest. B, testifying in his own behalf, admits the above facts, but states that he was A's friend; that he intended to deprive A of his money only temporarily; that he intended to save it for him, and did not intend to steal, when he took the money, or at any time. In such a case the instruction under consideration, if followed, would convict B, and yet he would be innocent of the crime charged. (See *State* v. *Van Winkle*, 6 Nev. :340; *People* v. *Farrell*, 31 Cal. 576.)

The judgment and order overruling defendant's motion for a new trial are reversed, and the cause remanded.

By HAWLEY, J., concurring:

Actions often speak plainer than words, and in many cases, undoubtedly, furnish "a safer foundation from which to draw .a conclusion" as to the intentions of men than declarations thereafter made in their own favor. (*State* v. *McGinnis*, 6 Nev. 112.) But this rule is neither universal nor infallible. It therefore follows that in all criminal cases where the defendant testifies in his own behalf, it is the duty of the jury to determine the intent of the defendant from all the facts and circumstances of the case. His testimony at the trial must be considered in connection with his acts, conduct, and declarations at the time of the commission of the alleged offense, uninfluenced by any intimation from the judge as to which is entitled to the most credit. The instruction of the court invaded the province of the jury in this respect, and may have prejudiced the defendant. I therefore concur in the judgment.