(February 21, 1914.)

STATE, Respondent, v. DANIEL R. JONES, Appellant.

[138 Pac. 1116.]

EMBEZZLEMENT—ADMISSION OF EVIDENCE—COMPETENCY OF CASHIER AS SIGNER OF CHECK TO TESTIFY AFTER INSOLVENCY OF BANK—INTENTION AND GOOD FAITH OF SIGNER OF CHECK MAY BE SHOWN WHEN MATERIAL.

1. Sec. 7065, Rev. Codes, defines embezzlement as follows: "Embezzlement is the fraudulent appropriation of property by a person to whom it has been intrusted."

2. Where a person is charged by an information with the crime of embezzlement, the intent may be shown and established either by direct or circumstantial evidence.

3.   Where a cashier of an insolvent bank issues a check upon such bank, payable to V., to whom the cashier was indebted, and the evidence shows conclusively the purpose of the defendant in the transaction, and that the bank recognized the check and the notes given therefor, and the credits that were considered in due course when the check was submitted through the different banks and when it reached the bank upon which the check was drawn, and the evidence is admitted upon the part of the appellant and also the officers of the bank, such evidence does not show embezzlement.

4.   Where a cashier at the time a check was drawn was indebted to the bank in a sum larger than the check, and a receiver was appointed for the bank after the check was issued, and the evidence shows that the motive, intention and belief of the appellant is relevant to the issue, it is competent for such person to testify directly upon that issue; or, stated differently, when the motive of a witness in the performance of a particular act, or in making a particular declaration, becomes a material issue, he may himself be sworn in regard to it, notwithstanding the diminished credit to which his testimony may be entitled as coming from the mouth of an interested witness.   It was error in the trial court to prevent the defendant from explaining any and all acts by him done with reference to the check in question, and the refusal of the court to allow him to further testify was prejudicial error against the rights of the defendant for which this case should be reversed.

5.   Where the evidence shows conclusively that the intention or good faith of the signer of the check was material to the suit, it may be shown directly, as well as from circumstances; and the party himself, if a competent witness, may testify directly to his intention or understanding, unless prevented by some other principle of law applicable to the particular case, and the refusal of the trial court to permit this evidence to be given is reversible error.

6.   *Held,* that the record in this case shows clearly and conclusively that the check was in due course received by the bank and entry thereof as a charge against the defendant was made on the books of the bank.   It is shown that the bank accepted the course of defendant in his actions from the time of the issuing of the check until the case came on for trial.

7.   *Held,* that the record and the evidence in this case are not sufficient to support the verdict and findings of the jury that the appellant was guilty of embezzlement.

8.   *Held,* that the judgment should be set aside in this case because the evidence is not sufficient to justify the judgment of conviction of the appellant.

9.   *Held,* that the trial court erred in denying the motion for a new trial, and that the motion for a new trial should be granted.

APPEAL from the District Court of the Sixth Judicial District for the County of Bingham.   J. M. Stevens, Judge.

The appellant was prosecuted on a charge of embezzlement and convicted and sentenced for a term of from one to fourteen years in the penitentiary.   Judgment *reversed.*

D. C. McDougall, Hansbrough & Gagon and J. W. Jones, for Appellant.

"Unless the owner is deprived of the thing (the money or property) involved in the transaction, there can, of course, be no embezzlement.   The owner must be deprived of the use of the property claimed to be embezzled by an adverse use or holding."   (*Higbee v. State,* 74 Neb. 331, 104 N. W. 748; *Chaplin v. Lee,* 18 Neb. 440, 25 N. W. 609; *McAleer v. State,* 46 Neb. 116, 64 N. W. 358.)   "To sustain the conviction of an agent for embezzling or converting to his own use the property of his principal, the facts must warrant the conclusion that such conversion was made by the agent with a felonious intent."   (*Hamilton v. State,* 46 Neb. 284, 64 N. W. 965.)

It appears that the jury, upon retiring for its deliberation, took to the jury-room certain papers, books and records, which appear from the exhibits attached to the bill of exceptions never to have been introduced in evidence; while these so-called exhibits were repeatedly referred to in the testimony, yet not having been offered in evidence, the defendant had no opportunity to examine them or to cross-examine the witnesses touching the same, yet the jury was permitted to receive the same as evidence and to take the exhibits to the jury-room and there examine and discuss them.   This was prejudicial error. (*Alaska Commercial Co. v. Dinkelspiel,* 121 Fed. 318, 57 C. C. A. 14; *Ogden v. United States,* 112 Fed. 523, 50 C. C. A. 380.)

Wherever the motive, intention or belief of a person is relevant to the issue, it is competent for such person to testify directly upon that point; or when the motive of a witness in the performance of a particular act, or in making a particular declaration becomes a material issue in a case, or reflects im-

portant light upon such issue, he may himself be sworn in regard to it, notwithstanding the diminished credit to which his testimony may be entitled as coming from the mouth of an interested witness. (Jones on Evidence, sec. 170.)

The rule thus stated is applicable to the right to testify in civil, *quasi*-criminal and criminal cases. (*Watson v. Chesire,* 18 Iowa, 202, 87 Am. Dec. 382; *Berkey v. Judd,* 22 Minn. 287; *Anderson v. Wehe,* 62 Wis. 401, 22 N. W. 584; *Germania Fire Ins. Co. v. Stone,* 21 Fla. 555; *Thurston v. Cornell,* 38 N. Y. 281; *Over v. Schiffling,* 102 Ind. 191, 26 N. E. 91; *Kerrains v. People,* 60 N. Y. 221, 19 Am. Rep. 158; *Roddy v. Finnegan,* 43 Md. 490; *Cortland County Superintendent etc. v. Superintendent etc.,* 44 N. Y. 22; *Norris v. Morrill,* 40 N. H. 395.)

"Intention is generally proved by circumstances, because usually there is no other mode of proof. But when the only person who knows the fact is accessible as a witness, his answer must necessarily be more direct evidence than any other; and if there is any reason to suspect his candor, the jury can make all the allowances called for by his position and demeanor." (*Watkins v. Wallace,* 19 Mich. 56, 75; *White v. State,* 53 Ind. 595; *People v. Baker,* 96 N. Y. 340; note, 21 Am. St. 314 et seq.; *People v. Hughes,* 11 Utah, 100, 39 Pac. 492; *State v. Maynard,* 19 Nev. 284, 9 Pac. 514.)

J. H. Peterson, Attorney General, J. J. Guheen and T. C. Coffin, Assistants, and J. E. Good, for Respondent.

As to the sufficiency of the evidence, nothing further need be said except that the case is precisely similar to the case of *State v. Sage,* 22 Ida. 489, 126 Pac. 403.

"The production of a paper and an examination of witnesses in respect to it before a jury, the genuineness of the paper being proved or admitted, makes it evidence for both sides." (*Commercial Bank of Buffalo v. Bank of State of New York,* 4 Hill (N. Y.), 516; *Alaska Commercial Co. v. Dinkelspiel,* 121 Fed. 318, 57 C. C. A. 14.)

STEWART, J.—On November 13, 1911, an information was filed in the district court of the sixth judicial district in

and for Bingham county charging the appellant, Daniel R. Jones, with the crime of embezzlement. The defendant was arraigned on November 14, 1911, and on November 15th entered a plea of not guilty. The cause was tried on June 2, 1913, and on June 4th a verdict of guilty was found and the value of the property embezzled was assessed at $1,000. A motion was made for a new trial and denied by the court on July 8th, and the trial court entered a judgment sentencing the defendant to serve a term of from one to fourteen years' imprisonment at hard labor in the penitentiary. The defendant appealed from the judgment.

The information charges the offense in the following language:

"The said Daniel R. Jones, on or about the 12th day of April, 1911, at the county of Bingham and state of Idaho, and prior to the filing of this information, was then and there an agent and banker, to wit: Cashier of the Blackfoot State Bank, a corporation, then and there formed, organized, existing and doing business in the city of Blackfoot, Bingham county, Idaho, and pursuant to the laws of the state of Idaho, and as such agent and banker, as aforesaid, there then and there came and was under the control and in the possession of him, the said Daniel R. Jones, certain personal property for the use of another, to wit, for the use of the Blackfoot State Bank, a corporation, the said personal property being one certain bank check, drawn upon the Blackfoot State Bank, a corporation, as follows, to wit, one certain bank check drawn by the said Daniel R. Jones on the said Blackfoot State Bank, a corporation, in the sum of one thousand dollars, which said bank check was then and there of the value of one thousand dollars, lawful money of the United States, and the said Daniel R. Jones having received and had the possession and control of the before mentioned and described personal property, by virtue of his trust as said agent of the said Blackfoot State Bank, a corporation, and as such banker as aforesaid, and while the said Daniel R. Jones was in the possession of and had under his control, by virtue of his said trust as said agent

for the Blackfoot State Bank, a corporation, and as such banker as aforesaid, the said personal property hereinbefore mentioned, described and set forth, and the whole thereof, he, the said Daniel R. Jones, did then and there wilfully, unlawfully, feloniously and fraudulently embezzle, convert and appropriate the said personal property hereinbefore mentioned, described and set forth, and the whole thereof, to a use and purpose not in the due and lawful execution of his trust as said agent and banker, to wit, to his own use.

"That the said Daniel R. Jones was examined upon said charge before a committing Magistrate, to wit, J. H. Anderson, Probate Judge, in said county of Bingham, and was by said magistrate held to answer said charge in this Court.

"J. E. GOOD,

"Prosecuting Attorney, Bingham County, Idaho.

"Endorsed with names of seventeen witnesses. ·

"Endorsed: Filed in open district court this November 13, 1911."

On November 14th, the defendant came into open court to be arraigned upon the information of the prosecuting attorney, heretofore found against him, and on being asked if Daniel R. Jones was his true name, answered that it was. The clerk then read the information to the defendant, and furnished him with a true copy thereof, and the defendant was given the statutory time in which to plead. On November 15, 1911, the defendant pleaded "not guilty," as charged in the information. A jury was selected and the case tried, and upon the close of the trial the jury brought in a verdict finding Daniel R. Jones guilty of embezzlement as charged in the information. This verdict was signed by G. W. Stowell, Foreman. In answer to the question as to the value of the property described in the information and alleged to have been fraudulently embezzled by the defendant, the jury found: "One Thousand Dollars. (Signed) G. W. Stowell, Foreman."

A motion was made for a new trial. The motion was based upon the following contentions:

(1) That the said verdict is contrary to the evidence herein and that the evidence is wholly insufficient to support or sustain said verdict.

(2) That said verdict is contrary to and against law and contrary to the instructions given by the court herein.

(3) That the court has misdirected the jury in matters of law and misdirected the jury in refusing to give the defendant's requested instructions.

(4) That the court erred in the decision of questions of law arising during the course of the trial and excepted to by said defendant.

(5) That the jury received and considered evidence out of court.

(6) Newly discovered evidence material to the defendant and which could not, with reasonable diligence, have been discovered and produced at the trial.

The motion for a new trial was denied, and the court entered judgment that the defendant, Daniel R. Jones, be imprisoned and kept at hard labor in the state penitentiary at Boise, Idaho, for the term of from one to fourteen years, commencing at the date of his arrival at the state penitentiary, and he was remanded to the sheriff of Bingham county to be delivered to the proper officer or officers to be by said officers conveyed to the penitentiary. The appeal is from the order overruling the defendant's motion for a new trial and from the judgment of conviction and from the whole thereof.

The facts in this case, as shown by the record, including the evidence and exhibits upon which the plaintiff was convicted, are in substance as follows: That on December 17, 1910, the appellant sent his personal check for $1,000, drawn on the Blackfoot State Bank, to Will Varley, at Nampa, Idaho; that Jones at that time was cashier of the Blackfoot State Bank. The check was paid by the Bank of Nampa and by that bank sent to Salt Lake, where it cleared in the usual manner, and came into the hands of the Utah National Bank, a correspondent of the Blackfoot State Bank. The Utah National Bank remitted the check with others to the Blackfoot State Bank, where it was received on December 27, 1910.

This particular check was last seen by appellant on the afternoon of December 27, 1910. The check was never charged to the account of the defendant nor did the Blackfoot State Bank ever receive any credit for the amount to offset the debit allowed to the Utah National Bank. On April 12, 1911, the defendant arbitrarily gave the Utah National Bank credit for $1,000 on the books of the bank and increased the loans and discounts of the Blackfoot State Bank by a similar fictitious amount.

The appellant during the trial testified as follows: "I haven't the check. I have made search for it. I never had the check in my possession. I don't know what became of it. All of my checks disappeared. I had my checks on my desk in the bank. They disappeared after the receiver was appointed. I do not know and couldn't say whether this check was with the balance of the checks. When that check came into the bank, it was just held there a few days until the first of January, when I expected to get my dividend. I presume that at the time the check was returned, Vanderwood and Cox and the stenographer, I have forgotten her name, were in the bank. I had a conversation with Mr. Vanderwood with reference to the check, after it came back to the bank. He asked me about the check and I told him to put it in the drawer and hold it there until the 1st of January. I don't know what he did with it. I believe he placed it in the drawer as I told him to. The entry of the check was placed on the reconcilement ledger. It was placed there by Mr. Vanderwood. It was carried on the reconcilement ledger from the 1st of January until March and then placed on the general ledger. I never gave Mr. Vanderwood or anyone else any other instructions with reference to what to do with that check. The reconcilement book where that item was being carried was the proper place to carry such an item. I have been cashier and banker in different banks sixteen or seventeen years. I have been engaged all that time in that class of work. I understand bookkeeping in banks. With reference to the custom of carrying such items on the reconcilement book, sometimes I carry them a short time and sometimes a long time, until I

could make some disposition of the item, whatever it might be.''

The above is a brief statement of the course of the check issued by appellant from the time he sent said check to Will Varley at Nampa, Idaho.

The appellant at the trial objected to the manner of the introduction of the records of the Blackfoot State Bank, and before tracing the transactions of the defendant, as shown by the record, we call attention to the exhibits severally as regards their introduction as evidence. The record shows the identification of the various exhibits with the view to showing that the records presented are the records of the Blackfoot State Bank.

Plaintiff's exhibit ''A'' was identified by William Varley, and reads as follows:

"Blackfoot, Idaho, Dec. 17th, 1910.

''Will Varley, Esq.,

"Nampa, Idaho.

''Dear Sir:

''You will find check #941 for $1000.00 and have credited your account with the interest.

''When your first letter came I was sick and did not get to the bank for a day or so, was the reason, and your money was loaned out so it took me a few days to call it in, and in fact I have not got it in yet, so if you can hold the check do so. Money is very close here this season, and it seems almost impossible to collect a cent from any one.

''Hoping all is well with you, I am,

"Yours,

"D. R. JONES."

Plaintiff's exhibit ''B'' is the minutes of the meeting of the board of directors of the Blackfoot State Bank, held April 11, 1911. These minutes were not objected to, and no objection is shown in the record.

Plaintiff's exhibit ''C'' was remittance slip from the Utah National Bank, dated December 24, 1910, including among others the $1,000 check in question. This was identified by

the witness E. B. White, a clerk of the Utah National Bank; also by H. W. Vanderwood, assistant cashier of the Blackfoot State Bank, and the evidence shows the date of receipt by the Blackfoot State Bank by H. W. Vanderwood. It was objected to by the defendant, but allowed.

Exhibit "D" is a duplicate of the above remittance slip which was retained by the Utah National Bank.

Exhibit "E" shows the reconcilement sheet dated February 13, 1911, sent by the Blackfoot State Bank to Utah National Bank, reconciling accounts at the close of business January 31, 1911; identified by Vanderwood and White. This evidence was objected to on the part of the defendant, but admitted.

Exhibit "F" was reconcilement sheet dated March 8, 1911, sent by the Blackfoot State Bank to the Utah National Bank, showing the condition of accounts at the close of business on February 28th, 1911.

Exhibit "G," reconcilement sheet dated March 22, 1911, sent by the Blackfoot State Bank to the Utah National Bank, showing the condition of the account at the close of business on March 15, 1911.

Exhibit "H," reconcilement sheet, dated April 10, 1911, sent by the Blackfoot State Bank to the Utah National Bank, showing the condition of accounts at the close of business, March 31, 1911.

Exhibit "I," reconcilement sheet, dated January 9, 1911, sent by the Blackfoot State Bank to the Utah National Bank, showing the condition of the account at the close of business on December 31, 1910.

Exhibit "J," sheet 98 of the reconcilement record of the Blackfoot State Bank, showing the account with the Utah National Bank on December 31, 1910, which corresponds with exhibit "I," and was identified by Vanderwood, Richards and the defendant, and no objection is made to this evidence in the record.

Exhibit "K," page 109 of the reconcilement record of the Blackfoot State Bank, showing the condition of the account with the Utah State Bank at the close of business on January

31, 1911, and identified by Vanderwood, Richards and defendant, and no objection was made in the record.

Exhibit "L," page 122 of the reconcilement record of the Blackfoot State Bank, showing the reconcilement account with the Utah National Bank at the close of business on February 28, 1911. This corresponds to plaintiff's exhibit "F." Identified by Vanderwood, Richards and the defendant.

Exhibit "M," page 125 of the reconcilement record of the Blackfoot State Bank, showing the reconcilement account with the Utah National Bank at the close of business on March 15, 1911. This corresponds with exhibit "G," and was identified by Vanderwood.

Exhibit "N," page 129 of the reconcilement record of the Blackfoot State Bank, showing the reconcilement of account with the Utah National Bank at the close of business on March 31, 1911. This corresponds with exhibit "H," and was identified by Vanderwood.

Exhibit "O," page 136 of the reconcilement record of the Blackfoot State Bank, showing the reconcilement of account with the Utah National Bank at the close of business on April 30, 1911. Identified by Vanderwood. No objection.

Exhibit "P," lines 23 and 24, under April 12, 1911, in the general ledger of the Blackfoot State Bank. Identified by Vanderwood.

Exhibit "Q," line 33, under April 12, 1911, of the general ledger of the Blackfoot State Bank. Identified by Vanderwood.

Exhibit "R," page covering April 12, 1911, in Bills Receivable and Interest Paid Register of Blackfoot State Bank. Identified by Vanderwood.

Exhibit "S," page covering April 12, 1911, in Register of Discounted Bills of Blackfoot State Bank. Identified by Vanderwood.

Exhibit "T," page covering December 27, 1910, of the Daily Statement Book of the Blackfoot State Bank. Identified by Vanderwood.

Exhibit "U," page covering April 12, 1911, of Daily Statement of Blackfoot State Bank. Identified by Vanderwood.

Exhibit "V," statement of the Utah National Bank with the Blackfoot State Bank for the month of December, 1910. Identified by Vanderwood.

Exhibit "W," remittance slip sent by Blackfoot State Bank to Utah National Bank on April 12, 1911. Identified by W. M. Cox. Objected to, but allowed.

Appellant objected to the manner of the introduction of the records of the Blackfoot State Bank, but this was not error. Said exhibits were all identified and were properly admitted, and are a part of the record in this case, and the admission of such evidence is not an error upon which the case should be reversed.

The facts in this case, including the exhibits above mentioned and other evidence introduced, are about as follows: December 17, 1910, the defendant, Daniel R. Jones, then being personally indebted to William Varley, residing at Nampa, Idaho, executed his personal check drawn upon the Blackfoot State Bank for the sum of $1,000, payable to William Varley, and transmitted the same to him by mail at Nampa. This check passed through the clearing-house at Salt Lake City, and was acquired by the Utah National Bank, a correspondent of the Blackfoot State Bank, about December 24, 1910. The check was remitted to the Blackfoot State Bank by the Utah National Bank and received at the former about December 27, 1910, with other remittances, and the defendant deducted $1,000 from the amount of the remittance and instructed the cashier to give the Utah National Bank credit for the balance. The assistant cashier, pursuant to such instructions, then carried this item in red ink upon the reconcilement ledger of the bank under the heading, "You debit (not on our books) 12/23, check D. R. Jones, $1,000." April 12, 1911, the defendant credited the Utah National Bank with $1,000 and increased the loan and discount account in the sum of $1,000, and thereafter the item was not further carried on the reconcilement ledger.

With reference to the check in question, William Varley cashed the same in Nampa and it was received at the Blackfoot State Bank December 27, 1910. The witness H. W. Van-

derwood, assistant cashier, testified that he saw the check on the desk of Jones in the bank on that date, and that he had never seen it after that time. The defendant testified: "I never had the check in my possession. It was placed in the drawer the last I remember, in the center of the cash drawer."

It is clear in this case that all the testimony practically shows that the transaction was carried upon the books of the bank in an open manner and that no entries were ever made in the books whereby any concealment was attempted, and that the defendant openly and at all times admitted his liability to the Blackfoot State Bank for $1,000; that at all times whenever the matter was talked of or came before the officers of the bank or the receiver thereof, the defendant always admitted his liability to the bank on this account in the sum of $1,000.

At the time of the appointment of the receiver of the Blackfoot State Bank the defendant was indebted to the bank in the sum of approximately $4,500, which was inclusive of this $1,000 check and the interest thereon, and upon the appointment of Mr. Cost as receiver, the defendant volunteered to give to him his note for the entire indebtedness and interest, some of the indebtedness then being represented by notes and a small overdraft, and a note was given to and accepted by Mr. Cost for the entire indebtedness and interest, executed by the defendant, and thereafter, within a short period, the defendant paid $2,000 on this note. The $2,000 was paid on the note long prior to the filing of the preliminary complaint in this action against the defendant before a magistrate.

The appellant in his brief and oral argument contends that the verdict of the jury and the judgment are not supported by the evidence, in that:

(a) There is no legal or competent evidence showing or tending to show that on April 12, 1911, or at any time, or at all, there came or was under the control or in the possession of said defendant, the check which is the subject matter of this charge, and there is no legal or competent evidence proving or tending to prove that after the execution of said check and the mailing of the same to William Varley, at Nampa,

Idaho, the check thereafter came into the control or into the possession of this defendant, in any manner whatsoever.

(b) There is no legal or competent evidence proving or tending to prove that the check referred to was not, at all times after it was cleared through the Utah National Bank, and remitted to the Blackfoot State Bank, in the control and possession of the Blackfoot State Bank, at all times, otherwise than through the control and possession of the defendant as the cashier and agent of said bank.

(c) There is no legal or competent evidence proving or tending to prove that said check was then and there, to wit, on April 12, 1911, of the value of $1,000, or of any value at all, or that after it was transmitted to the Blackfoot State Bank, and was charged to the defendant's account, it was of any value whatever, it having been so transmitted December 27, 1910.

(d) There is no legal or competent evidence proving or tending to prove that on April 12, 1911, or at all, the said check came into the possession or control of the defendant by virtue of his trust as the agent of the Blackfoot State Bank, or otherwise or at all; or that said check was ever in his possession, or under his control, after its execution and transmission to William Varley.

(e) There is no legal or competent evidence proving or tending to prove that on April, 12, 1911, or at all, the defendant feloniously or fraudulently, or in any manner embezzled or converted or appropriated the said check to any use or purpose whatsoever, or any use or purpose not in the lawful execution of his trust as such agent and banker, all of the evidence establishing the fact that upon the remittance of said check by the Utah National Bank to the Blackfoot State Bank, the same came into the possession of agents of the bank other than the defendant and was, according to custom, properly charged upon the books of the bank, and, according to custom, disposed of by such record by others than the defendant herein, and that the same did not come into the possession of the defendant and that defendant made no disposition of said

item otherwise than by indicating on the remittance sheet the record which should be made of said transaction.

The appellant also assigns as error the overruling of the motion for a new trial. Then follow many objections to admission of the several exhibits and the evidence of several witnesses. These objections have been examined and we find no error in the introduction of the exhibits, and that the evidence objected to was proper, and there was no error in the court's ruling upon the questions and the allowance of the evidence.

Vanderwood, the assistant cashier of the bank, states that he first saw the check on Mr. Jones' desk in the bank and asked him about it, and he stated that he should give the Utah National Bank credit for the balance. The record shows that Vanderwood understood from the conversation with the defendant that he should charge the item in the reconcilement ledger to the defendant, under the heading, "You debit (not on our books) 12/23, check D. R. Jones, $1,000," in red ink. It appears that this is the manner in which matters called in bank parlance "cash items" are disposed of, and that a check is evidence of indebtedness, and when it is received at the bank upon which it is drawn, it is charged to the maker and then delivered to him. A check, as considered by a bank, serves the following purposes: It must assign a part or all of an account of the maker in the bank, or it must create an indebtedness of the maker to the bank if he has no deposit but a right of credit there. After serving one of these purposes, it becomes the property of the maker.

V. W. Platt, state bank commissioner, testified: "If I had come into the possession of these books, the general ledger and the reconcilement ledger, and gone over this item of $1,000 without anyone telling me about the matter, it would indicate to me that it was a check of D. R. Jones for $1,000. It would show that there was an item of $1,000, a check of D. R. Jones, which was a debit."

The correct rule of law governing such facts is, that unless the owner is deprived of the thing (the money or property) involved in the transaction, there can, of course, be no em-

bezzlement. The owner must be deprived of the use of the property claimed to be embezzled by an adverse use or holding. (*Higbee v. State*, 74 Neb. 331, 104 N. W. 748; *Chaplin v. Lee*, 18 Neb. 440, 25 N. W. 609.)

The check in question was but the evidence of indebtedness of the maker, the defendant, to the bank, and upon its receipt by the bank custom required that it be charged to the defendant, and thereupon the check became his property. This method was adopted by the assistant cashier, and became the evidence of the indebtedness of Jones to the bank in the sum of $1,000, on account of this transaction, no matter how that indebtedness be evidenced. (*Higbee v. State, supra; Chaplin v. Lee, supra; McAleer v. State*, 46 Neb. 116, 64 N. W. 358.)

In the case of *Hamilton v. State*, 46 Neb. 284, 64 N. W. 965, the supreme court of Nebraska announces the rule: "That the relation of debtor and creditor exists between a principal and his agent, and that, on a balancing of the account, the agent would be found indebted to his principal, are not alone suffi· cient to sustain a verdict finding the agent guilty of embezzling or converting to his own use the property of his principal.

"To sustain the conviction of an agent for embezzling or converting to his own use the property of his principal, the facts must warrant the conclusion that such conversion was made by the agent with a felonious intent."

In the case of *People v. Hemple*, 4 Cal. App. 120, 87 Pac. 227, it is held:

"There are four essential elements of the offense of embezzlement by an agent which must concur, and each of which must be proved beyond a reasonable doubt, viz.: 1. That defendant was such agent; 2. That the embezzled property was received by him as that of his employer; 3. That he received it in the course of his employment; and 4. That he appropriated it to his own use with intent to steal it."

In vol. 10, Am. & Eng. Ency. of Law, 2d ed., in discussing the elements of the offense of embezzlement, at p. 983, it is stated in the text that "to make out a case of embezzlement under the statutes it is necessary to show . . . . sixth, that

his dealing with the property constituted a conversion or appropriation of the same; seventh, that there was a fraudulent intent to deprive the owner of his property.'' This rule is shown to be extensively supported by the authorities.

We think that the foregoing authorities apply to the case at bar, and that the evidence shows very conclusively the purpose of the defendant in the transaction, and that the bank recognized the check and the notes given in this case and the credits that were considered in due course when the check was submitted through the different banks and when it reached the Blackfoot State Bank, and this is shown by the record in this case without doubt.

It is contended by the appellant in this case that the court erred in refusing to permit the defendant to answer the question propounded to him, which is embraced in specification of error No. 26, which is as follows: ''I will ask you to state whether or not, from the time of this transaction when you gave the check to the present time, or at any time, you ever did intend to cover up anything with reference to that check, or defraud the bank out of any money.'' This was objected to on the ground that the same was a self-serving declaration.

We think there is no doubt that the authorities universally agree that wherever the motive, intention or belief of a person is relevant to the issue, it is competent for such person to testify directly upon that point; or, stated differently, when the motive of a witness in the performance of a particular act, or in making a particular declaration, becomes a material issue, he may himself be sworn in regard to it, notwithstanding the diminished credit to which his testimony may be entitled as coming from the· mouth of an interested witness. (Jones on Evidence, sec. 170.) · The rule thus stated is applicable to the right to testify in civil, *quasi*-criminal and criminal cases. (*Watson v. Chesire,* 18 Iowa, 202, 87 Am. Dec. 382; *Berkey v. Judd,* 22 Minn. 287; *Anderson v. Wehe,* 62 Wis. 401, 22 N. W. 584; *Germania Fire Ins. Co. v. Stone,* 21 Fla. 555; *Snow v. Paine,* 114 Mass. 520; *Thurston v. Cornell,* 38 N. Y. 281; *Over v. Schiffling,* 102 Ind. 191, 26 N. E. 91; *Kerrains v. People,* 60 N. Y. 221, 19 Am. Rep. 158; *Roddy*

*v. Finnegan,* 43 Md. 490; *Cortland County Superintendent etc. v. Superintendent etc.,* 44 N. Y. 22; *Norris v. Morrill,* 40 N. H. 395; *Wheelden v. Wilson,* 44 Me. 11.)

In *Delano v. Goodwin,* 48 N. H. 203, 97 Am. Dec. 601, it is said: "Before the statute making parties competent witnesses, the ordinary way to prove their intent or understanding was by circumstantial evidence. But now that the party himself is admitted to testify, there is no reason for confining his testimony to a variety of circumstances tending to show his purpose or understanding, when he knows and can testify directly what that purpose or understanding was. Accordingly, it has been held that where the intention or good faith of a party to a suit becomes material, it may be shown directly, as well as from circumstances; and the party himself, if a competent witness, may testify directly to his intention or understanding, unless prevented by some other principle of law applicable to the particular case." (*Fisk v. Chester,* 8 Gray (Mass.), 506; *Thacher v. Phinney,* 7 Allen (Mass.), 146; *Lombard v. Oliver,* 7 Allen (Mass.), 155; *People v. Tyler,* 36 Cal. 525; *State v. Harrington,* 12 Nev. 125; *State v. Maynard,* 19 Nev. 284, 9 Pac. 514; *People v. Hughes,* 11 Utah, 100, 39 Pac. 492; *Gardom v. Woodward,* 44 Kan. 758, 21 Am. St. 310, 25 Pac. 199; *Watkins v. Wallace,* 19 Mich. 57; *White v. State,* 53 Ind. 595; *People v. Baker,* 96 N. Y. 340; *Over v. Shiffling, supra.*)

Under these authorities it is clear in this case that it was error in the trial court to prevent the defendant from explaining any and all acts by him done with reference to the check in question, and the refusal of the court to allow him to further testify was prejudicial error against the rights of the defendant, for which this case should be reversed.

It is urged in this case that the court erred in permitting the witness Richards to give his testimony in narrative form, wherein he was asked: "I will ask you to take these exhibits and trace the item of $1,000, D. R. Jones check, drawn on the Blackfoot State Bank, payable to William Varley, from December, from its appearance at the Blackfoot State Bank, December, 1910, up to and including anything that may have

been done with reference to it, as shown by the exhibits, on April, 12, 1911.'' This question was objected to as incompetent, irrelevant and immaterial, and for the further reason that the question is too general and does not afford opportunity to interpose objections, or for proper cross-examination. In his testimony the witness referred time and time again to papers and records which were not introduced in evidence.

The next contention of appellant is that the jury upon retiring to the jury-room took with them certain books and papers and records which appear from the exhibits attached to the bill of exceptions never to have been introduced in evidence, and it appears from the testimony that in particular the general ledger of the bank was among the records taken by the jury and not introduced in evidence.

This objection goes to exhibits ''P,'' ''Q,'' ''R,'' ''S'' and ''T,'' which are plaintiff's exhibits, and it is clearly shown that the general ledger was admitted in evidence, which is true of the other exhibits objected to.

The case cited by the respondent *State v. Sage,* 22 Ida. 485, 126 Pac. 403, is not in point in the present case, for the reason that in the Sage case the check which was drawn on the bank was in some way diverted from the regular course and was not received by the bank and not charged to the proper account, and circumstantial evidence pointed to the defendant as the person responsible for such diversion. While in the present case the check was in due course received by the bank and entry thereof as a charge against the defendant was made on the books of the bank.

We think that the record in this case shows clearly that the check was in due course received by the Blackfoot State Bank and entry thereof as a charge against the defendant was made on the books of the bank. It is shown that the bank accepted the course of defendant in his actions from the time of the issuing of the check until the case came on for trial.

Sec. 7065, Rev. Codes, defines embezzlement: ''Embezzlement is the fraudulent appropriation of property by a person to whom it has been intrusted.'' The record in this case fails to show that the defendant was guilty of embezzlement.

Elliott on Evidence, sec. 2972, vol. 4, discusses very extensively the weight of evidence, and among other things states the following, which applies to the present case, that is: "The evidence should establish an intent to defraud beyond a reasonable doubt. And the evidence must not only sufficiently establish the intent to defraud the owner, but also conversion to one's own use, or to the use of some other person. That is, the intention to convert must also be established. The gist of embezzlement being the conversion or the breach of trust, the evidence must be sufficient to establish it. . . . . In order to warrant a conviction, however, a conversion must usually be established which the agent, under his employment, had no right to make. It must be shown that the accused was in the employ of or held a relation of trust or confidence toward the person whose property he is alleged to have wrongfully taken for his own use; and any evidence which tends to prove the facts may in general be received as relevant evidence."

The same author further says: "That an officer of such bank is not guilty of embezzlement, abstraction or wilful misapplication of its funds under such statute in obtaining money from the bank for his own use by means of overdrafts or loans by *bona fide* arrangement with its authorized officers or committee, but he is only protected by such arrangement where it was made by those representing the bank in good faith and in the supposed interest of the bank."

The appeal in this case is from the denial of the motion for a new trial, and the trial court, under this opinion, clearly committed an error in denying the motion for a new trial, and a new trial of said cause should be granted.

The judgment is reversed.

Sullivan, J., concurs.

AILSHIE, C. J., Dissenting.—It seems to me that the facts of this case bring it clearly within the principles of law followed and adopted by this court in *State v. Sage*, 22 Ida. 489, 126 Pac. 403, and I have no doubt but that the trial court and jury were governed by the rule applied in that case.

This court unanimously affirmed the judgment of conviction in the Sage case and held it to be a case of embezzlement, and I fail to see any difference either in principle or the effect of the acts committed in this case.

I dissent from the views expressed by the majority, and believe it our duty to affirm the judgment.