STATE v. O. C. KLINGMAN.

(Filed 6 December, 1916.)

1. **Criminal Law—Principal and Agent—Embezzlement—Misapplication of Funds—Indictment—Statutes.**

A sales agent for automobiles was indicted for embezzling moneys he had received for his principal from a sale to a certain person, and it appeared that he had in fact paid his principal for this sale, but from funds he had received for his principal from a sale to another person, with the misappropriation of which the indictment did not specifically charge him. *Held,* the agent's direction that the funds received from the other machine be applied to payment of the machine named in the indict-

ment was a wrongful misapplication of funds within the meaning of Revisal, sec. 3406, the facts being peculiarly within the knowledge of the agent and unknown to his principal, and the facts disclose that he had been guilty of two acts of embezzlement instead of one; and a conviction of the offense as charged was proper.

### 2. Criminal Law—Indictment—Several Counts—General Verdict.

A general verdict of guilty in a criminal action covers all counts in a bill of indictment, and if good as to any count it will be upheld when the offenses charged are of the same grade and punishable alike.

ALLEN, J., dissenting; HOKE, J., concurs.

APPEAL by defendant from *Cline, J.,* at Special June Term, 1916, of GUILFORD.

*T. H. Calvert, Assistant Attorney-General, for the State.*

*E. D. Broadhurst, Dorman Thompson, King & Kimball, and William P. Bynum for defendant.*

CLARK, C. J. The defendant is indicted and convicted of embezzlement as manager of the Greensboro branch of the J. I. Case Threshing Machine Company. In June, 1914, he was informed that his connection with the company would cease on 1 July, 1914. He thereupon went to Racine, Wis., and in an interview with one of the officials at headquarters stated that while he did not consider himself an embezzler, he had sold property belonging to the company and had used the money to about the amount of $5,000. He promised on his return to Greensboro to furnish a statement of the property sold and the proceeds used. Instead of returning, he went to Seattle, Wash., where he changed his name and let his hair and beard grow, but was located and arrested some fourteen months later and brought back to this State, at great expense, upon requisition papers issued upon this indictment.

The indictment alleges the embezzlement of two checks, one for $55.85 and one for $1,050, which had been received by him as manager for said J. I. Case Threshing Machine Company from the sale of an automobile to Dr. E. C. Brasington. It is in evidence that these checks were handed by Brasington to H. C. Bowden, a traveling salesman of the company, who indorsed and turned them over to the defendant, who indorsed the $55.85 check and deposited it to his personal account in bank, and afterwards it was drawn out by him on his personal checks. The $1,050 check was cashed by him and used, together with other money, in the purchase of a check on New York for $1,366, which the defendant remitted to the J. I. Case Threshing Machine Company, requesting that $1,275.83 thereof should be credited on the sale of an automobile previously sold to one T. L. Bland, which he had reported sold

for cash. The sale of the automobile (19587) to Brasington was never reported by the defendant to the home office at Racine and no remittance covering the proceeds of said sale was ever received by said company, but it was reported by him to be on hand at Lancaster, S. C., in July, 1914, at the time the defendant was dismissed from the service of the company.

The contention of the defendant is that inasmuch as the J. I. Case Threshing Machine Company received out of the money arising from the Brasington sale a check for $1,050, that therefore there had been no embezzlement. There had been a previous embezzlement by the defendant in not remitting the proceeds of the sale of the machine to Bland, and when this second embezzlement was made in the sale of another machine to Brasington the fact that the defendant used part of the proceeds in paying to the machine company what he had received on the Bland machine did not condone the embezzlement of the money received for the machine sold to Brasington. The defendant simply committed two embezzlements instead of one, and used the proceeds of the latter embezzlement to make good, without the knowledge or consent of his principal, the first embezzlement of the proceeds of the sale to Bland.

The plea of the defendant (as was said by this Court in regard to a defense pleaded by this writer for the defendant in *Spilman v. Navigation Co.*, 74 N. C., 678) "is worth preserving for its amusing fallacy." The plea in this case has its parallel in the man who purchased a hat of a merchant and then suggested he would like to exchange it for a pair of shoes. As he was leaving the store the merchant demanded payment for the shoes. The buyer responded, "I paid you the hat for them." The merchant said, "But you have not paid for the hat," to which the reply was, "But you have your hat over there behind the counter." No ingenuity can change the fact that the defendant sold the machine to Brasington as agent for the prosecuting company, that it was the defendant's duty to have remitted the proceeds in payment thereof, but that instead he used $1,050 of it in part purchase of a check to pay his former defalcation of the proceeds of the machine sold to Bland, and that the $55.85 has been checked out by the defendant for his own purposes.

The $1,050 of the proceeds of the machine sold to Brasington thus included in the draft sent forward to make good the defalcation in the proceeds of the Bland machine is none the less an embezzlement. *S. v. Foust*, 114 N. C., 842. It was used for the personal purposes and benefit of the defendant to screen himself from punishment on that defalcation, and the $55.85 was also drawn out for his own purposes.

Revisal, 3406, denounces a fraudulent misappropriation or misapplication. That statute says "shall fraudulently . . . misapply," and it does not matter how it was done or for whose benefit. *S. v. Foust*, 114 N. C., 842. "The using by a clerk of money of his employer to replace other sums previously appropriated by him to his own use constitutes embezzlement, for which he is liable to his employer in a civil action. *Bowman v. Brown*, 52 Iowa, 437.

In *Gibson v. State*, 13 Ga., 459, relied on by defendant, it was held that a payment made by an agent on a wrong account was not embezzlement when it appeared that all the money collected by him as a fiduciary had been fully paid in. But here, in a matter peculiarly within the knowledge of the defendant and in which the company had to rely on his statement, he reported that this check was to be credited on the Bland purchase (in which he had defaulted), and without its knowledge or consent he directed this application of the check, part of the proceeds of which he had derived from the sale of the machine to Brasington. This was a fraudulent misapplication of the proceeds of the check to protect himself from liability for the embezzlement of the proceeds of the Bland sale. A willful misapplication of funds by a fiduciary is within the terms of Revisal, 3406.

The National Bank Act provides that any agent "who embezzles, abstracts, or willfully misapplies any of the money, funds, or credits" with which he is intrusted shall be guilty of a misdemeanor. In construing that statute in *U. S. v. Northway*, 120 U. S., 332, it is said: "It is evidently the intention of the statute not to use the words 'embezzle' and 'willfully misapply' as synonymous. In order to misapply the funds of the bank it is not necessary that the officer charged should be in actual possession of them by virtue of a trust committed to him. He may abstract them from the other funds of the bank unlawfully, and afterwards criminally misapply them, or by virtue of his official relation to the bank he may have such control, direction, and power of management as to direct an application of the funds in such a manner and under such circumstances as to constitute the offense of willful misapplication."

A general verdict of guilty covers all counts in the bill of indictment, and if good as to any count, it will be upheld when the offenses charged are of the same grade and punishable alike. *S. v. Toole*, 106 N. C., 739; *S. v. Robbins*, 123 N. C., 730; *S. v. Sheppard*, 142 N. C., 586; *S. v. Avery*, 159 N. C., 495. Even if there had been any error as to the count on the $1,050 check, there was testimony not contradicted, showing the misappropriation of the proceeds of the $55.85 check, and nowhere in the record or in the brief of the defendant is there any

suggestion that there is any exception to the form of that count, and there being evidence, the general verdict would stand.

This is not the case of proving other offenses, but of proving this offense by showing that the proceeds of the sale of the machine to Brasington were fraudulently misapplied to cover up another defalcation by the defendant to the same company, not for the purpose of proving the former defalcation, but incidentally to show the fraudulent misapplication thereto of the proceeds of the sale to Brasington.

No error.

ALLEN, J., dissenting: The defendant is indicted for the embezzlement of two checks, one for $55.85 and the other for $1,050.

He was the manager of the branch house of the Case Machine Company at Greensboro, and there was employed by the machine company at the same branch house a cashier named Kornegay, who was under bond and whose duty it was to receive the money and funds of the company.

As to the check for $55.85, the State offered evidence tending to prove that it was received by the defendant and placed to the credit of his personal account in bank and checked out by him.

The defendant admitted that he received this check, that he placed it to his personal account, and checked it out. He, however, testified that a few days before he received the check he had paid to the State Treasurer the $500 automobile tax due by the Case Machine Company to the State, at the request of the machine company and of its cashier at Greensboro, and that the check for $55.85 was handed to him by the cashier at Greensboro for the purpose of reimbursing him in part for the money which he had advanced.

This evidence of the defendant was not contradicted by any evidence offered by the State, although if it was not true, all the facts were within the knowledge of Kornegay, the cashier of the machine company.

As to the check for $1,050, the evidence offered on the part of the State shows that it was turned over to the cashier of the Case Machine Company, and that he used this check and other checks to buy a New York check for $1,366.27, payable to the Case Machine Company, and that this latter check of $1,366.27 was transmitted to the Case Machine Company and was received and used by the company. This check was sent in a letter prepared by the cashier and signed by the defendant, in which the Case Machine Company was requested to credit the account of T. L. Bland with $1,275.83 of the amount. Bland had bought a machine for cash and he owed no account to which the amount could be credited.

The defendant testified that he did not know that this request to credit the account of Bland was in the letter; that the letter was prepared by the cashier and, with other letters prepared by him, placed on his desk for signature, and that he signed the letter in the ordinary course of business. This was not contradicted by Kornegay, the cashier.

The State also offered evidence of several officers of the machine company to the effect that after the defendant was discharged by the company he went to Racine and in conversation with them he admitted that he had used moneys belonging to the company amounting to about $5,000, although they say he denied that he had embezzled any of the money or funds of the company, and they do not say that either of the checks mentioned in the indictment was referred to.

The defendant admitted that he had a conversation with the officers of the company in Racine, but he denied telling them that he had used any money or property of the company. He says that he was indebted to the company in the sum of $5,000 or $6,000 for automobiles bought from the company in the regular course of business, and with the knowledge of the officers of the company, and that he went to Racine for the purpose of asking for time in which to pay; that after he left Racine he went to see several of his relatives for the purpose of borrowing the money with which to pay the company; that he was unable to do so, and that when he was arrested he was at work in a regular business, and that it was his intention to pay the company all he owed it.

The defendant introduced sixteen witnesses who testified to his good character, and no witnesses were introduced to prove the contrary.

On this evidence I think the defendant was entitled to an instruction that if the jury believed the evidence they ought to acquit the defendant, because as to the first check of $55.85, the uncontradicted evidence shows that he received it from the cashier to reimburse him for moneys that he had advanced for the machine company, and as to the second check, the defendant received no benefit from it, did not convert it to his own use, and it was sent to the machine company, whose property it was, and used by it.

His Honor instructed the jury, among other things, as follows: "The court instructs you, as a matter of law, that if you find from the evidence beyond a reasonable doubt that this defendant, as a branch house manager, in that capacity, by reason of that position and in connection with the company, received this check for $1,050, and that it was the property of the company, it came into his hands in that relationship, and then, with the intent to defraud and deceive the company, did wrongfully and feloniously *misrepresent the facts about it to the company, and made a statement to the company to the effect that it was the proceeds of another collection*—I say, with the intent to

deceive and cheat and defraud the company, *did transmit to them this money as ostensible payment of the Bland automobile,* a cash sale, when it was in truth and in fact the sale of the Brasington automobile, and you find *that in that way* he so misappropriated and misapplied the funds of the company, and so applied, without the company's knowledge, *misleading the company about the facts,* the money from the Brasington automobile in satisfaction of the sale of the Bland automobile, then *upon such finding of facts,* if you are satisfied beyond a reasonable doubt, *I charge you as a* matter of law *it would be your duty to find the defendant guilty."*

I think this instruction erroneous, for two reasons:

In the first place, he charges the jury that the defendant can be convicted under the bill of indictment if he misapplied and misappropriated the two checks, and the bill of indictment does not charge a misapplication or misappropriation.

The language of the indictment is that the defendant did "fraudulently, unlawfully, and feloniously take, make away with, and secrete with intent to embezzle and fraudulently convert to his own use the property, and then and there fraudulently, unlawfully, and feloniously convert to his own use and embezzle the said property; and the jurors aforesaid, and upon their oaths aforesaid, do say, that the said O. C. Klingman then and there in manner and form aforesaid, did fraudulently, unlawfully, and feloniously embezzle and convert to his own use the said property of the said J. I. Case Threshing Machine Company."

In the next place, I cannot understand how a defendant can be convicted of embezzling and converting property to his own use when he has not used the property and when it has been turned over to the owner and has been used by the owner, although he may have intentionally directed it to be applied to some other account; and the authorities seem to support this position, and I find none to the contrary.

In *Commonwealth v. Este,* 140 Mass., 279, the treasurer of a town obtained money from a bank on a promissory note of the town and used the money in paying proper town charges. It was held that he could not be convicted of an embezzlement of the money, although he did not account for it to the town, and although such use of the money was contrived as a part of a scheme to defraud the town and to cover up an embezzlement of money already made or intended to be made. On page 284 of that case the Court says: "We deem it clear that whatever part was so used and intended to be used was not embezzled, even if the use was contrived as part of a scheme to defraud the town. The fact that the payment was a means of embezzling other money in the past would not make it an embezzlement of the money paid. Neither

would the fact that he represented it to the town (not to the payees) as a payment of other town money; that is, as a payment from his balance on hand, and not from the notes. Embezzlement retains so much of the character of larceny that it is essential to the commission of the crime that the owner should be deprived of the property embezzled by an adverse holding or use. No doubt, questions may arise as to what is a sufficient deprivation or adverse holding, as in *Commonwealth v. Mason,* 105 Mass., 163, and cases cited. . . . But the principle remains, and, when property is held at every moment as and for the master's property, fraud as to the source from which it comes, or fraudulent intent as to something else, is not a sufficient substitute for the missing element. To this extent we entirely agree with the English cases of *Regina v. Poole,* Dearsley & Bell, 385; *Regina v. Holloway,* 2 C. and K., 942, and 1 Denison, 370; and *Rex v. Webb,* 1 Moody, 431. We think that the fourth ruling requested should have been given. Justice to the defendant also required that a similar instruction should have been given as to the other transaction not embraced in that request."

The fourth ruling above referred to, which the Court says should have been given in behalf of the defendant, is as follows: "If the jury shall find that the $1,800 received by the defendant of the Marlborough Savings Bank was used by the defendant in paying proper town charges, and he intended so to use it, then such use would not be embezzlement, although it was not accounted for in his account with the town."

The same principle is also announced in *Chaplin v. Lee,* 18 Neb., 440; *S. v. Schumacher,* 162 Iowa, 231; *Higbee v. State,* 74 Neb., 331. In this last case the Court says: "Unless the owner is deprived of the thing (the money or property) involved in the transaction, there can, of course, be no embezzlement." Citing several cases.

In *State v. Jones,* 25 Idaho, 587, "The correct rule of law governing such facts is that unless the owner is deprived of the money or property involved in the transaction there can, of course, be no embezzlement. The owner must be deprived of the use of the property claimed to be embezzled by an adverse use or holding."

A case involving the principle contended for by defendant is *Gibson v. State,* 13 Ga. App., 459, rehearing denied 23 September, 1913. Gibson was elected tax collector of Brooks County, Georgia, to fill the unexpired term of his deceased father, who had held that office for many years. At the time he was inducted into office there was a shortage in the accounts of his father of several thousand dollars which had been collected as taxes for 1908. In 1909 the defendant Gibson

collected the taxes for that year and applied them to the settlement of the shortage of 1908. In the summer of 1910 Gibson was called upon for a settlement, but he was unable to comply with this demand because the funds had been applied as collection upon the accounts of his father for the year 1908. He was thereupon indicted for embezzlement, tried and convicted, and upon appeal the judgment was reversed. Among other things, the Court says: "The single proposition upon which we base our ruling is that one cannot be shown to be guilty of embezzlement who has paid over all the money which he has collected to the person to whom it is due, even though he may have paid it upon the wrong account. The record shows that every dollar collected by this defendant was paid by him, either to the county of Brooks if it was county tax, or to the Comptroller-General if it was a State tax. It is true, he directed that the money be applied to the shortage of his deceased father, in the effort to preserve the memory of that father from disgrace; but, after all, the county of Brooks and the State of Georgia received every dollar he collected, and it requires nothing more than the application of these payments to the proper account to correct the wrong, if any, done by the defendant."

The defendant seems to have been found guilty upon the general idea that he has done something wrong, without regard to the charge in the indictment, and it is only in this way, as I see it, that the conviction can be sustained.

HOKE, J., concurs.