THE STATE OF IOWA, Appellant, v. CHARLES WALLICK, Appellee.

1. **Embezzlement:** OF AGENT FROM PRINCIPAL: PROOF NECESSARY. The crime of embezzlement by an agent, under section 3909 of the Code, is not established by proof of the fact of agency and the conversion by the agent of his principal's property, without a showing that the conversion was fraudulent. Accordingly, where the defendant, an agent for the sale of machinery, was bound by the printed portion of a contract to turn over to his principal by a certain date all money and notes taken by him for such machinery, but by a written supplement to such contract his obligations were somewhat changed, and it was doubtful whether thereunder he was not authorized to use the notes and money so taken, and to settle therefor in another way, *held,* that proof of his conversion of the money and notes did not establish embezzlement beyond a reasonable doubt, and that the court rightly directed a verdict for the defendant.

*Appeal from Iowa District Court.*—HON. S. H. FAIRALL, Judge.

· SATURDAY, JANUARY 28, 1893.

· INDICTMENT for embezzlement. The court directed a verdict for the defendant, and the state appealed.—*Affirmed.*

*John Y. Stone*, Attorney General, *J. T. Beem*, County Attorney, *C. Hedges*, and *J. H. Feenan*, for the State.

*H. Howard* and *M. J. Wade*, for appellee.

GRANGER, J.—The Warder, Bushnell & Glessner Company is a corporation, and as such, by a written contract, appointed the defendant as its agent for the sale of "Champion binders, mowers, reapers," etc. In the agreement the company is designated as "first," and the defendant as the "second" party. The following are material parts of the agreement, as indicating the obligations of the defendant.

"The second party further agrees, in acting as such agent, to receive these machines, and pay the freight and all charges on them; to shelter and take good care of them until sold; and to sell them only to such farmers as are known by them to be perfectly good and responsible, or require ample security when credit is given; to take all notes on the blanks of the Warder, Bushnell & Glessner Company, due at the dates above mentioned, and bearing interest at the rate of eight per cent. from August 1, 1890, until due, and ten per cent. after due, and made payable at the bank or express office nearest the residence of the purchaser; each note to be indorsed and guarantied by the party of the second part, in the following form, viz.: 'For value received, we hereby guaranty the payment of the within

note or any extension thereof, and waive protest, demand, and notice of nonpayment thereof,'—and notes as above, for the full amount of these bills, to be turned over to the Warder, Bushnell & Glessner Company by the first day of August, 1890. The second party further agrees to remit to the Warder, Bushnell & Glessner Company the proceeds of each and all cash or part cash sales of Champion machines, promptly on receipt of the money, remitting the net prices as stated above, less a discount of five per cent. on the net amount of cash remitted."

The contract containing these provisions is made by filling a printed form, and is signed by the parties, December 19, 1889. Attached thereto, in typewriting, of the same date, and also signed by the parties, is the following:

"In consideration of Charles Wallick, the party of the second part, making an exclusive contract with the Warder, Bushnell & Glessner Company, party of the first part, to sell Champion harvesting machines in the territory named, in a contract made with the first party this date, and hereto attached, and of which this agreement is made a part, and in consideration of the covenants herein made by second party, the first party agrees, at time of settlement, to accept, without being guarantied by said second party, notes of farmers taken for Champion machines, on its blanks, signed by persons owning farm real estate and personal property worth at least one thousand dollars over and above all debts and exemptions, or notes on its blanks taken for Champion machines, and secured by a first mortgage on the machine, or other good personal property exempt from the operation of a landlord's lien, to the value of twice the amount of the notes, provided all the notes described in the mortgage are turned over to the first party; and the second party hereby warrants the notes to be turned over by him under this agree-

ment to be of the character required by this agreement, and to conform to the requirements thereof; notes not classed as above to be guarantied by said second party in the form provided in the contract."

The two instruments are in the record as Exhibits B and A, B being the former. The indictment charges the defendant with embezzling notes and money, in violation of his duties as agent under the terms of these contracts. At the trial of the indictment, after the introduction in evidence of the contracts, the defendant objected to testimony showing the sale by him of machinery, because from the contract in evidence it appeared that he had the right to use money that came into his hands. The court expressed its views in accord with the objection; whereupon the following "concession" was made of record: "It is conceded on the part of the prosecution that the acts of the defendant as charged in the indictment, and which the prosecution claims constituted the crime charged, of embezzlement, occurred as charged in the indictment, under the contract in testimony marked 'Exhibit B.' That will confine it, your honor, right to the contract." Upon this state of the record the defendant moved the court to direct a verdict in his favor, which the court did, and we are to determine the legality of its action.

The section of the Code under which the indictment is presented is 3909, and contains the following: "If any  *   *   *   agent, clerk, or servant of any incorporated company  *   *   *   who in any manner receives or collects money or any other property for the use of, and belonging to, another, embezzles or fraudulently converts to his own use, or takes and secretes, with intent to embezzle and convert to his own use, without the consent of his employer, master, or the owner of the money or goods collected or received, any money or property of another  *   *   *   which

has come to his possession or under his care in any manner whatever, he shall be deemed guilty of larceny, and punished accordingly." Counsel for the appellant devote considerable space to show that the defendant was the agent of the company, and seem to regard that as a decisive fact in the case. We agree with counsel as to the fact, but not as to its effect. Because of this agreement we have omitted to set out parts of the contract that might otherwise be important. To our minds, the case turns upon the obligations of the defendant as the agent of the company. The statute is designed to prevent the fraudulent conversion or concealment of property by agents. It is not necessarily a crime for an agent to convert to his own use the property of his principal or employer; hence something more than agency and conversion must be established. While the record leaves it in doubt that there had been a conversion, the parties seem to so regard the fact, and it may be well for us to so assume, and dispose of the case on that theory.

The two instruments, by their terms, constitute one contract. It will be well for us to inquire how the defendant had a right to settle for the notes and money received by him in the sale of the machinery. By one clause of Exhibit B, in print, he was required on sales in whole or in part for cash to remit the money promptly on its receipt. The notes taken were to be "indorsed and guarantied," and turned over to the company by the first day of August, 1890. Another clause of the same exhibit, indorsed in writing on the margin, requires all money and notes to be turned over to one Simpson on receipt, less commission, etc. Simpson was the local collector for the company. It is likely the latter clause, in writing, would prevail over the former one, in print. If, for the purposes of the case, it be conceded that, with Exhibit B as the contract, the offense would be complete, we should

look to Exhibit A to ascertain how it affects the obligations of the defendant.

The case is by no means freed from doubt, and we do not determine it under rules that would be applicable to a civil liability. The fact that there is so much doubt is a strong, if not conclusive, argument in support of the action of the district court. That Exhibit A so changes the terms of the contract as to permit a settlement and satisfaction in a different way from Exhibit B is not doubtful; but there is some obscurity as to what part of Exhibit B it changes or modifies. The appellant's thought is that it affects only the settlement for "unsold goods on hand at the end of the season," or the settlement for certain attachments, as to both of which Exhibit B makes provision. The opposing thought is that it includes a settlement for the proceeds of machinery sold. If the latter is the correct construction, then the defendant had the right to settle by either of the modes prescribed; and, if in good faith he used the proceeds intending to settle for the machinery under the provisions of Exhibit A, there could be no such intent as the law implies to sustain a charge of embezzlement. To constitute embezzlement, the conversion must be fraudulent,— something more than an honest mistake. Applying the oft-repeated rule that, to convict in criminal cases, "the proof must be inconsistent with any other rational supposition," and the case seems to be quite free from difficulty. Certainly the position of the appellee as to the construction is not irrational, whatever might be the logical conclusion. We are satisfied that, with the condition of the record, there was no evidence on which a conviction could have been sustained. See, as quite applicable to this conclusion, *Miller v. State*, 20 N. W. Rep. (Neb.) 253.

The judgment of the district court is AFFIRMED.