PEOPLE *v*. EAMAUS.

1. CRIMINAL LAW—EVIDENCE—MAINTAINING HOUSE OF ILL-FAME
   BY AGENT—ADMISSIBILITY.
   In a prosecution for keeping and maintaining a house of
   ill-fame, evidence that defendant, though making her
   home elsewhere, did, within the time charged, control,
   manage, conduct, keep, and maintain said place as a
   house of ill-fame, through the agency of another, *held*,
   properly admitted.

2. SAME—CONTINUANCE—ABSENT WITNESS—ABUSE OF DISCRETION.
   The denial of a continuance in a criminal case cannot be
   said to have been an abuse of discretion on the part of
   the trial judge, where it was not made to appear what
   defendant expected to prove by the absent witness. BIRD,
   C. J., and KUHN, J., dissenting.

Exception before judgment from Kalamazoo; Weimer, J. Submitted June 12, 1919. (Docket No. 97.) Decided October 6, 1919.

Etta Eamaus was convicted of keeping a house of ill-fame. Affirmed.

*W. J. Barnard,* for appellant.

*Frank F. Ford,* Special Assistant Prosecuting Attorney, for the people.

STEERE, J. Defendant was convicted in the circuit court of Kalamazoo county of keeping and maintaining a house of ill-fame at 215 East Kalamazoo avenue on May 23, 1917, and on divers other days and times between that day and May 23, 1918. The case is brought here for review on exceptions before sentence.

The grounds for reversal urged and relied upon as stated in the brief of defendant's counsel are:

"(1)  Denying motion for continuance.
"(2)  Errors in admission and rejection of testimony."

No rejection of testimony, adverse to defendant's interest, is pointed out and we find none in the printed record. The only claimed erroneous admission is that the court permitted testimony "with reference to what took place at 215 East Kalamazoo avenue on the 27th day of March and before the respondent had any control over the premises." The testimony of the prosecution was directed to showing that defendant, though making her home elsewhere and not openly participating in the social and business activities at 215 East Kalamazoo avenue did in fact during March, 1918, as also before and after within the time charged, control, manage, conduct, keep and maintain that place as a house of ill-fame through the agency of a woman whom she had in direct charge as keeper. As to the month of March, a witness named Bernice Heustis testified that she went to the house at defendant's solicitation and was there in charge for her "from the early part of March until the middle of May, 1918"; that it was a furnished house and defendant owned all the furniture of every description; that witness ran the house on a percentage basis for defendant, who paid the bills for rent, fuel, gas, laundry, etc., occasionally visiting the place but communicating with her largely by phone, messengers, and letters, saying of the income:

"I made a settlement with her with reference to money taken in every night. I would send it over by a messenger boy or she would come over after it."

There was abundant testimony both direct and circumstantial to plainly prove, if believed, that defendant was by the indirect methods indicated maintaining and keeping at the time and place charged a house of ill-fame, frequented for the purpose of prostitution and

lewdness. In fact her resort in conducting the business to messengers and letters, sent by them to her agent, proved to be her nemesis. She was a forceful letter writer and sometimes went into details. An identified letter of some length from her to the woman in charge sent at a time when conditions were apparently somewhat disturbing begins as follows:

"Here is linen. Say, listen, I want to say this on phone. Mother here, cannot talk just now, but I've this to say, that all the damn neighbors on Kala avenue can go to hell or they can call the police. * * * I'll run my own business regardless of any one street."

Of the two alternatives which she proposed the latter was adopted and defendant, with others, was arrested for the offense of which she was convicted. She was taken into custody under a warrant from the municipal court of Kalamazoo on May 24, 1918, and the warrant returned that day. She demanded an examination before the committing court which was set for June 3d. On that date she waived examination and was bound over for trial to appear in the circuit court of Kalamazoo county on June 6th. On that date she was arraigned under an information charging her with the offense stated, to which she pleaded not guilty. She then interposed a motion for continuance based upon the sickness of an alleged material witness named, "Mrs. Hatte Mook," who lived "near Lyons, Michigan, in the city of Ionia, county of Ionia, State of Michigan." The application was accompanied by a verified physician's certificate as follows:

"W. R. Grant, M. D.,
"Lyons, Mich., 6/6/1918.
"To whom it may concern:
"This is to certify that in my opinion, owing to certain conditions of her heart, that it would be very imprudent for Mrs. Hatte Moot to undergo any ex-

amination in court of a legal nature, as the least excitement would be liable to prove fatal to the said lady.

"WM. R. GRANT, M. D.,

"Lyons, Michigan."

The motion was denied, followed by application to this court for a writ of mandamus to compel the trial court to set aside the order of denial and grant defendant's motion, which was refused. The case was brought on for trial June 10th, when objection was interposed for defendant and exception taken to her being compelled to proceed to trial at that time. It was shown that Mrs. Hatte Mook (or Moot), the witness whose absence and sickness were urged as ground for continuance, was the mother of defendant and present in the city of Kalamazoo in the latter's residence at 224 West Water street at the time of defendant's arrest, she then stating to the officer that her sick mother was there with her.

It is conceded by defendant that applications for continuance are within the discretion of the trial court, but urged that refusal to grant defendant's motion was an abuse of discretion constituting reversible error.

Defendant's affidavit for continuance is general in form, stating without any disclosure of her identity that Hatte Mook living "near Lyons, Michigan, in the city of Ionia," is a material witness for her as she is advised by counsel, etc., but gives no intimation of what it is expected to prove by this witness or her relation to defendant. According to defendant's letter she would not even talk with 215 Kalamazoo avenue over the telephone when her mother was present. The opinion certificate of Dr. Grant, of Lyons, that it would be very imprudent for Mrs. Moot to attend court as a witness owing to the condition of her heart, while destitute of definite facts, seems to furnish a life certificate of immunity from "any examination in

court of a legal nature." If so, defendant's recourse was to take her depositions, but no steps were taken to that end or further showing offered when the case was called for trial several days after the motion was denied.

In *People* v. *Anderson*, 53 Mich. 60, this court declined to disturb the denial of a continuance by the trial court on a general showing of the absence of a material witness, where the time between the arrest and trial was about the same as here, and the application certainly as meritorious so far as the two records disclose, for there defendant was confined in jail from the time of his arrest without counsel or means to make preparation for his defense until three days before his trial, when friends procured him an attorney. This court there said after a review of the situation: "On the whole we are not prepared to say this was fatal error," and affirmed the conviction. That the trial judge is in a more advantageous position to observe and understand the merits of the showing as applied to the situation in those matters involving an exercise of discretion than a printed record affords has more than once been recognized by appellate courts, and it must therefore be clearly shown that the court unfairly and prejudicially abused such exclusive authority before a discretionary ruling will be disturbed. *People* v. *Foote*, 93 Mich. 38; *People* v. *Burwell*, 106 Mich. 27; *Roney* v. *Healy*, 170 Mich. 46. In the *Roney Case* the rule and reason applicable to the situation here are thus concisely stated by Justice OSTRANDER:

"Unless there was a clear abuse of discretion, the ruling of the trial court must stand. *McNaughton* v. *Evert*, 116 Mich. 141. * * * I think the trial court committed no error in refusing the postponement. * * * because it was not then, and is not now, made to appear that Mr. Hally would or could give testimony concerning a material disputed issue of fact."

The conviction will stand affirmed and the cause remanded for further appropriate proceedings by the trial court.

MOORE, BROOKE, FELLOWS, and STONE, JJ., concurred with STEERE, J.

BIRD, C. J. (*dissenting*). I think this case should be reversed and a new trial ordered for the reasons stated in *People* v. *Eamaus, ante,* 442, filed herewith.

KUHN, J., concurred with BIRD, C. J.

The late Justice OSTRANDER took no part in this decision.