HARRIS BROWN, *Plaintiff in Error*, v. STATE OF FLORIDA, *Defendant in Error*.

### Division A.

### Opinion Filed August 5, 1926.

1. In a prosecution for embezzlement, where the information describes the property involved as "the sum of $5,000, lawful currency of the United States," and the proof shows the property to have been a check in amount of $5,000, and not currency, this circumstances does not constitute a variance between allegation and proof, in view of Section 6068, Rev. Gen. Stat. 1920.

2. In a prosecution for embezzlement, where the evidence clearly shows that the defendant in good faith, and without secrecy or concealment, retained the property involved under a *bona fide* claim of right, based upon reasonable grounds, however ill-founded the defendant's claim may have been under the circumstances shown by the evidence, his action does not constitute the crime of embezzlement under Section 5146, Rev. Gen. Stat. 1920.

A Writ of Error to the Criminal Court of Record for Dade County; Tom Norfleet, Judge.

Reversed.

*Shipp, Evans & Kline*, for Plaintiffs in Error;

*J. B. Johnson*, Attorney General, and *Roy Campbell*, Assistant Attorney General, for the state.

STRUM, J.—Plaintiff in error, hereinafter called the defendant, was convicted of embezzlement, the charge being based on Section 5146, Rev. Gen. Stat. 1920.

The property involved is described in the information as "the sum of $5,000, lawful currency of the United States." The proof shows the property to have been a check in amount of $5,000, and not currency. In view, however, of the provisions of Sec.. 6068, Rev. Gen. Stat. 1920, this circumstance does not constitute a variance between allegation and proof. Thalheim v. State, 38 Fla. 169, 20 South Rep. 938.

The prosecution arose out of the following circumstances: One Samuel Kantor was the owner of certain lands in Dade County. Kantor entered into an agreement in writing with Docielle Realty Corporation by which he agreed to sell the lands to the latter for a total consideration of $65,000.00. The agreement was dated July 21st, 1925. The "closing date" of the sale was fixed by the agreement at "forty days from (its) date," which would be August 30, 1925. Upon the execution of this agreement the Realty corporation paid Kantor the sum of $2500.00 as "binder or deposit," to apply on purchase price. On the closing date, August 30, 1925, the Realty Corporation was to pay Kantor the further sum of $22,500.00 on the purchase price. Rocielle Realty Corporation then entered into an agreement with Columbia Specialty Paper Box Company by the terms of which the Realty Corporation agreed to sell the lands to the Box Company for a total consideration of $71,000.00, of which the sum of $2500.00 was paid in cash by the latter purchaser to the Realty Corporation at the time of executing their agreement. The agreement between the Realty Corporation and the Box Company was dated August 6, 1925, and the "closing date" thereof was August 29, 1925, on which latter date the Box Company was to pay the Realty Corporation the further sum of $28,500.00 on the purchase price. In other words, the Realty Corporation resold the lands to the Box Company at a profit of $6000.00. The latter sale

was negotiated through a Mr. Williams, a real estate sales-
man. The Box Company in turn sold the lands to a Dr.
Jaysen. The evidence indicates that when August 29, 1925,
arrived, that being the "closing date" between the Box
Company and the Realty Corporation, the Box Company
did not make the requisite payment of $28,500.00 as pro-
vided by its contract with the Realty Corporation. The
Realty Corporation, however, does not appear to have taken
any steps to terminate or forfeit its contract with the Box
Company. Soon thereafter, apparently early in September,
a Mr. Harry Jeffrey, representing the Box Company, ac-
companied by Dr. Jaysen, opened negotiations with the
Realty Corporation through Mr. Williams, the salesman,
for an extension of time within which to make the second
payment which became due on August 29, 1925. Rocielle
Realty Corporation, it seems, was willing to grant the ex-
tension, provided the owner, Mr. Kantor, was willing to
grant the Realty Corporation the requisite extension under
their contract, and provided further the Box Company
immediately paid the sum of $5000.00 to the Realty Cor-
poration on account of the contract between the Box Com-
pany and the Realty Corporation, which sum apparently
was to be paid in turn to Kantor as an inducement for him
to grant the necessary extension. If Kantor refused to
grant the extension, then the $5000.00 was to be returned
by the Realty Corporation to Jeffrey. The check in ques-
tion, payable to the order of Rocielle Realty Co., was then
delivered to Mr. Williams, who in turn delivered it to the
defendant, Harris Brown. The defendant delivered the
check to the payee thereof, Rocielle Realty Corporation, of
which he was secretary and vice-president, and in which
he was fifty per cent stockholder. Thereupon the following
letter was written to the Box Company:

"September 10, 1925.

Columbia Specialty Paper Box Co.,
    Miami, Florida.

Dear Sirs:

In consideration of your payment today of $5000.00 on account of purchase of Lots 33 and 34 in Block 55, Brickellar Miami, Florida, I hereby agree to give you a thirty day extension from date to close providing the original owner grant it otherwise I will refund to you the amount of five thousand dollars, which has been paid to us on Sept. 11, 1925.

                    ROCIELLE REALTY CORP.,
            By HARRIS BROWN,
                            Vice-Pres. & Secty."

There is a conflict between the prosecuting witness, Harry Jeffrey, and the defendant as to whether or not the owner in fact granted the thirty day extension, but there appears in the record a letter from Samuel Kantor, the owner, to the defendant, as vice-president of Rocielle Realty Corporation, dated October 17, 1925, containing this language: "Please take notice that unless you close on this (meaning the lands involved in the contracts) not later than Monday, October 19th, 2:00 P. M., we shall hold you in default of your option and you may consider the whole deal off." Dr. Jaysen, as a State's witness, testified that the owner told him that he refused to grant the extension, but that "it was after thirty days after the 10th of Sepember, after the extension was supposed to expire." Harry Jeffrey testified that "about the 25th or last part of October, maybe the 20th or 22nd," he demanded the return of the $5000.00 from the defendant, Harris Brown, having so demanded the return of the check or money for

the reason that the defendant had failed to procure the thirty day extension which was the consideration for the check. The defendant took the position that his obligation was to procure an extension of thirty days from September 10, 1925, the date he received the check, and that since Kantor, the owner, did not cancel the option contract between himself and Rocielle Realty Corporation until October 19, 1925, and since the Realty Corporation took no action to forfeit or terminate its contract with the Box Company prior to October 19, 1925, but on the contrary held open the latter contract awaiting the second payment from the Box Company, that the Box Company had received a thirty day extension, and more, within which the latter could have carried out the terms of its contract with Rocielle Realty Corporation by paying the remainder of the second payment, but did not do so, and hence he contended that neither Jeffrey nor the Box Company was entitled to the return of the check in controversy, since he (the defendant) and the Realty Company have carried out the undertaking to procure an extension of 30 days from September 10, 1925.

Whatever may be the ultimate merits of the claim made by the defendant as to his right to retain the check under the circumstances related, the evidence clearly shows that the defendant in good faith, and without secrecy or concealment, retained the check, under a *bona fide* claim or right, based upon reasonable grounds. However ill-founded the defendant's claim may have been, under the circumstances shown by the evidence his action does not constitute the crime of embezzlement under Sec. 5146, Rev. Gen. State. 1920, because the requisite fraudulent intent— an element of the crime under that section of the statutes —does not sufficiently appear.

The trial court erred in denying the defendant's motion for a new trial, and the judgment of conviction is therefore reversed.

Reversed.

BROWNE , C. J., AND ELLIS, J., concur.

WHITFIELD, P. J., AND TERRELL AND BUFORD, J. J., concur in the opinion.