(No. 22523.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ERNEST J. STEVENS, Plaintiff in Error.

*Opinion filed October 22, 1934—Rehearing denied Dec. 13, 1934.*

SIMS, STRANSKY & BREWER, (FRANKLIN J. STRANSKY, TIMOTHY I. McKNIGHT, and FRANK S. SIMS, of counsel,) for plaintiff in error.

Otto Kerner, Attorney General, Thomas J. Court-
ney, State's Attorney, and J. J. Neiger, (Edward E.
Wilson, J. Albert Woll, Henry E. Seyfarth, John
E. O'Hora, John T. Gallagher, and Earle C. Hurley,
of counsel,) for the People.

Mr. Justice Stone delivered the opinion of the court:

Plaintiff in error, Ernest J. Stevens, was indicted in the
criminal court of Cook county, with his father, James W.
Stevens, and his brother, Raymond W. Stevens, charged
with embezzlement under section 75 of the Criminal Code.
(Smith's Stat. 1933, p. 1030.) This section provides as
follows: "If any officer, agent, clerk or servant, of any
incorporated company * * * embezzles or fraudulently
converts to his own use, or takes and secretes with intent
so to do, without the consent of his company, employer
or master, any property of such company, employer, mas-
ter or another, which has come into his possession or under
his care by virtue of such office or employment, he shall
be guilty of larceny."

The indictment consisted of four counts. The first
charged the crime of larceny as bailee, the second and
third counts charged embezzlement, and the fourth count
larceny. The first and fourth counts were dismissed and
the cause proceeded on the second and third counts, charg-
ing embezzlement. Subsequent to the return of the indict-
ment Raymond W. Stevens died. A severance was ob-
tained by James W. Stevens on account of illness and the
trial proceeded as to plaintiff in error alone. The second
count of the indictment charged that James W. Stevens,
being chairman of the board of directors, Raymond W.
Stevens, being the president, and plaintiff in error the vice-
president of the Illinois Life Insurance Company, unlaw-
fully and feloniously, without the consent of the Illinois
Life Insurance Company, did embezzle and fraudulently
convert to their own use certain moneys which were deliv-

ered and came into the possession and under the care of the defendants by reason of their employment. The third count differs from the second only in that it charges the embezzlement of property, personal goods and money.

Plaintiff in error filed a motion to quash the indictment, which was overruled. He then sought an order for bill of particulars, which was allowed, and a bill of particulars was filed, in which it is charged that on May 15, 1931, the defendants embezzled $300,000 of the property of the Illinois Life Insurance Company; that on June 29, 1931, they embezzled $400,000 of the property of the Illinois Life Insurance Company; that on July 1, 1931, they embezzled $150,000 belonging to the Illinois Life Insurance Company, and on January 4, 1932, they embezzled the sum of $700,000, property of the Illinois Life Insurance Company; that this money was converted to their own use by fraudulently transferring and causing it to be transferred from the Illinois Life Insurance Company to the Stevens Hotel Company. The bill of particulars specifies, also, that on December 3, 1931, defendants did embezzle and fraudulently convert to their own use sixty United State Liberty bonds, of the sum and value of $10,000 each, the goods and property of the Illinois Life Insurance Company, by causing the bonds to be transferred and delivered to the Stevens Hotel Company.

The facts concerning these transactions are not in dispute. As to conclusions of law and inferences of fact to be drawn from the facts, there is, however, very serious dispute. The record shows that James W. Stevens was the founder of the Illinois Life Insurance Company. At the time of the transactions involved here he was chairman of the board of directors and its active directing head. Raymond W. Stevens, now deceased, brother of plaintiff in error, was president and devoted his entire time in assisting his father in the management of the insurance company and performing his duties as president. Plaintiff in

error was vice-president of the insurance company and took no active part in the operation or management of it but was a member of the board of directors and finance committee. He had no desk in the offices of the company. The by-laws of the insurance company provided that the vice-president could act only in the case of the death, absence or inability of the president to act. Such contingency did not arise and plaintiff in error was never called upon to perform any act in his capacity as vice-president. The Illinois Life Insurance Company was authorized to write life insurance and had power to loan its available funds.

Plaintiff in error, his father and brother, owned 31,000 shares and other members of the Stevens family owned 6600 shares, or a total of 37,600 shares, of the 40,000 shares outstanding of the life insurance company. The record shows that the value of the combined holdings of the Stevens family in the life insurance company was $18,-300,000. The board of directors of the life insurance company consisted of James W. Stevens, Raymond W. Stevens, the plaintiff in error, John H. Stevens, Stephen L. Tompkins and Bert J. Stookey. Under the by-laws a finance committee of five members was appointed by the board of directors from their own number. This committee was charged with the duty of supervising investments and loans, and under the by-laws no loans other than policy loans could be made except they be authorized by the board of directors or by the finance committee, which was required to make a report at each regular meeting of the board of directors of investments made during the preceding quarter.

The life insurance company acquired title to land at the northwest corner of LaSalle and Madison streets, in the city of Chicago, which was purchased by plaintiff in error, his father and brother. In 1907 the LaSalle Hotel was erected thereon. Plaintiff in error was the managing head of that hotel from the time it opened to the time of

the trial. The LaSalle Hotel issued bonds, which were sold and later paid out of profits realized from the operation of the hotel, which profits for a number of years ran over $1,000,000 per year.

In 1925 James W. Stevens, Raymond W. Stevens and plaintiff in error organized the Stevens Hotel Company, with a capital stock of 60,000 shares preferred, of the par value of $60 a share, and 140,000 shares common, of the par value of $10 per share. The common stock was owned largely by James W., Raymond W. and Ernest J. Stevens, the plaintiff in error. The total value of common stock was $5,000,000. Construction of the Stevens Hotel was begun and it was completed on May 2, 1927. The purchase price of the real estate and cost of the building and furnishings were financed by the issue of $13,000,000 first mortgage six per cent twenty-year sinking fund, series "A" bonds, $3,000,000 first mortgage six and one-half per cent twenty-year sinking fund, series "B," bonds and $6,000,000 general mortgage seven per cent sinking fund bonds, all secured by trust deed on the Stevens Hotel properties. The series "A" and "B" bonds were prior lien to the general seven per cent sinking fund bonds. Series "A" bonds were purchased by the National City Bank of New York and the series "B" bonds were purchased by the United States Realty Company of New York. The Illinois Life Insurance Company purchased $3,000,000 of the seven per cent bonds. In 1928 plaintiff in error purchased $250,000 at par value of the seven per cent sinking fund bonds and in 1931 purchased $40,000 of those bonds, paying $39,000 cash therefor. Raymond W. Stevens purchased $250,000 of the seven per cent bonds. Other members of the Stevens family purchased of these bonds in amounts aggregating over $350,000. The Stevens family owned about four-fifths of the common stock of the Stevens Hotel Company.

The Stevens Hotel opened for business in May, 1927. The total cost of the hotel and furnishings was $28,786,930.

The hotel is the largest in the world and contains approximately 3000 rooms. The testimony shows that, considering it was a new hotel, its business was deemed satisfactory—in fact, better than anticipated—and showed gradual increase in 1927, 1928 and 1929 until the stock market crash of October, 1929. The evidence shows that in 1931, by reason of conditions produced by the economic depression, the hotel company found it necessary to borrow money to pay the interest on its outstanding bonds in order to prevent the bonds coming in default and to prevent foreclosure and sale of the property. Between June and December, 1931, James W. Stevens loaned to the hotel company $522,000 of his individual funds. During all the time from the opening of the hotel in 1927 until May, 1932, the hotel company met its current obligations, but it was necessary to borrow from time to time during 1931 to meet payment of its accrued bonds and interest. This money was loaned by the Illinois Life Insurance Company to the hotel company and constitutes the alleged crimes with which plaintiff in error, his father and brother are charged.

It is conceded by the People that the insurance company had power under its charter to make loans to the hotel company. The manner in which the loans were made to the hotel company was as follows: On May 15, 1931, the hotel company bought from the insurance company series "A" bonds in the amount of $350,000 and gave its corporate note for $300,000 and $32,430.67 in cash. This loan was authorized in writing by James W. Stevens, Raymond W. Stevens and Bert J. Stookey, three members of the finance committee of the insurance company. The loan was afterwards, at a regular meeting of the board of directors of the life insurance company, approved and ratified. Plaintiff in error's participation in this transaction was as a member of the board of directors voting to ratify and approve the loan. It is conceded that the bonds purchased

in that transaction were used to pay the hotel company's accruing sinking fund obligations under the trust deed. On June 29, 1931, the hotel company, to meet the interest on its funded debt falling due July 1, 1931, borrowed $400,000 from the life insurance company, giving its corporate note. The proceeds of this loan, together with other moneys of the hotel company, were used to pay the balance of the interest due on July 1. This loan was authorized and ratified in the same manner as the other and by the same persons. On July 1, 1931, an additional $150,000 was loaned to the hotel company in the same manner and by the same persons. All money so received by the hotel company was used to pay its accruing bonds and interest.

The next transaction complained of was the purchase by the hotel company from the insurance company of sixty United States Liberty bonds of $10,000 each, the hotel company giving therefor its corporate note dated December 3, 1931, for $608,463, which was the market price of the bonds. This transaction was authorized in writing by James W. Stevens, Raymond W. Stevens and plaintiff in error, as members of the finance committee. On December 24, 1931, the hotel company sold $100,000 of the Liberty bonds and paid the proceeds to the insurance company, and the hotel company's note was endorsed accordingly. On January 4, 1932, the hotel company sold the remainder of the sixty liberty bonds and issued its check for the remainder of its note given the insurance company, paying the note in full. On January 4, 1932, the board of directors of the insurance company authorized the purchase of a corporate note of the Stevens Hotel Company for $700,000, with interest at five per cent. The proceeds of this loan were used by the hotel company to pay accruing bonds and interest. All of these transactions were ratified by the board of directors of the insurance company.

It is said by the People that these transactions constituted embezzlement. It is charged that the Stevens Hotel

Company was insolvent; that the plaintiff in error, his father and brother knew it was insolvent and that to loan money to it constituted embezzlement of the funds loaned. It is not contended that any of the funds loaned by the insurance company to the hotel company were converted to the use of plaintiff in error, his father or brother personally. The only argument by which it is sought to hold them guilty of embezzlement is that they owned the larger portion of the stock of the hotel company, and that, therefore, to loan money to that company was to convert the money to their use. The record shows that the insurance company owned about $3,000,000 of the mortgage bonds of the hotel company, and it is earnestly argued by counsel for plaintiff in error that, regardless of whether, in looking back upon the transactions, it can be seen that the loans were bad loans, such does not show the transactions to be a felony but they are equally consistent with an honest attempt on the part of the plaintiff in error and his father and brother to protect the investments of the insurance company in the hotel company.

To prove insolvency on the part of the Stevens Hotel Company the People, over objection of plaintiff in error, were permitted to introduce opinion evidence as to the value of the property of the hotel company by two witnesses—one Hornof and one Simon. Hornof testified that his opinion was in nowise based on the fair cash market value of the hotel property but upon his assumption and calculations that the economic life of the Stevens Hotel would be thirty-five years from the time it was completed; that during that time it would have an average occupancy of fifty per cent of its rooms; that the value of the land at the end of thirty-five years would be approximately $4,000,000, so that the present value of the land was $761,419. In preparing his values he used a chart of values of the county assessor's office known as No. 1928-D and used for determining reproduction costs. He gave no evidence as

to what rate per cent on investment he considered in making up his estimates of the value of the hotel company, but gave his opinion that the assets of the hotel company would not be worth more than $9,000,000. Simon's opinion as to the value of the hotel company's assets was based on an assumption that the life of the hotel would be thirty-three years; that the average room occupancy would be fifty per cent; that the land on which the hotel was situated at the end of thirty-five years would be worth $6,400,000. He testified that he arrived at his valuations by making an estimate of the financial possibilities of the hotel during the remainder of its economic life, based upon past performance during that time and general conditions in Chicago and the hotel business, and by the complicated formula he used he arrived at the opinion that the value of the assets of the hotel company would be $15,000,000. The record shows without dispute that the Stevens Hotel was constructed of unusually heavy materials; that unusual precautions and methods were used to make the building fireproof; that seventy per cent of the construction materials are indestructible; that the life of the building, in the opinion of the architect who prepared the plans and supervised its construction, was at least seventy-five years; that several hotels over forty years old are now among the leading hotels of Chicago; that the actual cost of the building and equipment of the Stevens Hotel was $22,511,930.22; that the appraised value of the land was $6,275,000; that the hotel was at all times kept in first-class condition; that $80,000 was expended in new equipment and two ball-rooms put in at a cost of $30,000, all of which was charged to operating expenses. The balance sheets of the Stevens Hotel Company as of December 31, 1931, offered in exidence by the People, show assets of $30,655,528.37 and liabilities $34,980,702.74. After deducting therefrom $7,000,000 capital stock, the liabilities amounted to $27,980,702.74.

Two questions arise in connection with this proof as to the insolvency of the hotel company. It is conceded that it is incumbent upon the People to prove not only that the hotel company was insolvent and that these defendants knew it was insolvent, but that they fraudulently loaned money to it for the purpose of converting such funds to their own use. Such is the provision of the statute. The second question as to this feature of the case arises on the objection of the plaintiff in error of the competency of proof.

Plaintiff in error at the close of the People's evidence and at the close of all the evidence moved for a directed verdict of not guilty. These motions were overruled. The jury found him guilty of embezzling $1,308,463, which is the total of the transactions of December 3, 1931, and January 4, 1932, the former being a loan of $608,463, which the evidence clearly shows was re-paid, and the loaned $700,000 on the note of the hotel company.

Plaintiff in error argues, first, that the record fails to show any evidence of criminality on his part or on the part of the officers or directors of the life insurance company with reference to the transactions; second, there is a total failure of proof to sustain the material allegations of the second and third counts of the indictment—*i. e.*, that the transactions were without the consent of the Illinois Life Insurance Company; third, the People's evidence offered to establish the alleged insolvency of the Stevens Hotel Company was wholly incompetent and insufficient to show insolvency as that term should be defined in a criminal case. His counsel also argue that to sustain a conviction of embezzlement the proof must not only show that the accused had possession of the money and property which he is accused of embezzling, but that it is likewise essential that the People prove that the transfer of money from the insurance company to the hotel company was done feloni-

ously and with an intent to convert the same to plaintiff in error's own use.

The first assignment of error raises the question whether, under the facts appearing, plaintiff in error has been guilty of embezzlement. The theory of the People on the trial, and urged here, to sustain the judgment of conviction, is, that since the officers of the life insurance company and the hotel company were the same persons, and that the Stevens Hotel Company was insolvent to the knowledge of the officers of the life insurance company while the life insurance company was solvent, and plaintiff in error, as an officer of both corporations, with the other defendants, loaned the money and property of the life insurance company to the hotel company, he is guilty of embezzlement. The People concede that under this theory it is necessary that they prove (1) that the hotel company was insolvent, and (2) that plaintiff in error, as an officer of both companies, knew of such insolvency and fraudulently loaned the funds of the insurance company to it. The question is, then, whether these transactions, undisputed as to the fact, amount to embezzlement under the criminal statute. The People, in support of their contention that they do, have cited *Wille* v. *State,* 240 N. W. (Wis.) 823, and *State* v. *Ross,* 104 Pac. (Ore.) 596. In the former case the defendants were husband and wife. They organized Wille & Co. for the tranaction of an accounting business and owned all the stock except qualifying shares. The net worth of that business was never as much as $7000. In two of the years covered by the transactions their profits were negligible. In one of them, at least, the losses were substantial. They also organized a finance company, largely with capital furnished by others. Both companies occupied the same offices. The defendants were president, treasurer and secretary, respectively, of the finance company as well as of Wille & Co. They had the entire management and control of the finance company and received

substantial salaries from it. The finance company, organized for the purpose of loaning money on collateral security, was limited in its loans to a certain per cent of the value of collateral offered. The defendants transferred $79,000 of the finance company to Wille & Co. and placed the notes of Wille & Co., without collateral, with the finance company, but caused the records of the finance company to show that Wille & Co. had deposited collateral security with its note. The record as to the collateral was wholly fictitious and fraudulent. It was clearly shown that the defendants in that case, without regard to their individual financial worth, took money from the finance company, and by means of putting it into the hands of Wille & Co. checked it out for their own personal use in such large sums as they could not hope to re-pay. Wille & Co., in other words, was used as a mere instrumentality through and by means of which the natural persons in control thereof carried out their acts. The defendants occupied positions of trust in the finance company and dealt with it, in violation of their trust, to their own benefit. The case was clearly one of fraudulent misappropriation of funds to the personal benefit of the defendants and can in nowise be cited as authority for the position here taken by the People that they have proved the plaintiff in error guilty of fraudulently converting the funds of the life insurance company to his own use. There is in the case before us no sham corporation but one owning and operating a mammoth hotel. Money loaned to it was used to meet its bonded indebtedness. None was converted to the personal use of plaintiff in error. In this case there was no secrecy. Nothing appears in the record tending to indicate that there was any attempt to cover up the transactions. The loans were made by and with the consent of the insurance company.

In *State* v. *Ross, supra,* Ross was president of a bank which received a special deposit of State funds under cer-

tain provisions of the statute. When the bank failed it lacked a large sum having enough money to pay this special State deposit. The officers, of whom Ross was one, were prosecuted and convicted of embezzlement. The question there was whether the evidence showed that Ross, as director or president, participated in or was party to a conversion of funds. The record in that case showed that he and the other officers were guilty of using this special fund for other particular purposes of their own. The money belonged to the State. The accused had no right to use it at all. It is conceded that in this case the directors and finance committee of the insurance company had a right to loan money to the hotel company, but the People argue that having loaned it to an insolvent corporation in which they held a large amount of stock, they are guilty of embezzlement.

Embezzlement differs from larceny in that in the former the original possession is lawful, as the accused acquires possession of funds or property by reason of the relation of principal and agent. The *gravamen* of the offense consists in the subsequent conversion of property so received, with felonious intent on the part of such agent or employee to convert the same to his own use. The People must prove, beyond all reasonable doubt, that the agent converted the property to his own use with the felonious intent to deprive the owner thereof. (*People* v. *Parker,* 355 Ill. 258; *State* v. *Culver,* 97 N. W. (Neb.) 1015.) There must be proof of fraudulent conversion. (*People* v. *Ervin,* 342 Ill. 421; *People* v. *Davis,* 269 id. 256.) To establish embezzlement the evidence must show, beyond all reasonable doubt, that the defendant feloniously and fraudulently converted to his own use, or took and secreted with intent to so convert, without the consent of his principal, the money or property of such principal. (*McElroy* v. *People,* 202 Ill. 473; *Ross & Co.* v. *Innis,* 35 id. 487.) Criminal intent is a necessary element to be proved, beyond

a reasonable doubt, in order to establish a charge of embezzlement, and the accused has a right to testify as to his intention in the commission of the acts which the People say constitute the crime. (*People* v. *Ervin, supra; People* v. *Storer,* 329 Ill. 536.) Embezzlement involves secrecy—concealment by the accused of his conversion. The absence of proof of secrecy and concealment is a circumstance which tends to negative the charge that the accused was actuated by a felonious intent. (*People* v. *Parker, supra; State* v. *Jones,* 25 Idaho, 587, 138 Pac. 1116; cases cited in 20 Corpus Juris, 436; 2 Bishop on Crim. Law, (9th ed.) par. 379; *People* v. *Galland,* 55 Mich. 628.) Without proof of felonious intent a conviction of embezzlement cannot stand. *People* v. *Parker, supra; Ridge* v. *State,* 192 Ind. 638, 137 N. E. 758; *Brown* v. *State,* 92 Fla. 538, 109 So. 438; *State* v. *Hurley,* 234 S. W. (Mo.) 820; *State* v. *Wallick,* 87 Iowa, 369, 54 N. W. 246.

In this case the transactions, so far as shown by the record, were done in the regular course of business of the insurance company and approved by its board of directors. The officers of the insurance company had a right and power to loan money to the hotel company. In this whole record there is not a scintilla of evidence of any concealment or fraud attempted. It may have been an exercise of bad judgment on the part of plaintiff in error and his co-defendants to have loaned this money and we in nowise commend those loans, but it is a matter of common knowledge and appears in the evidence in this case that large new hotels require a period of about five years before they can begin to show a profit in business. It is one thing to look back upon a transaction in the light of things that have since occurred and quite another to look at it at the time. It is but natural that the plaintiff in error and his co-defendants should desire to protect the Illinois Life Insurance Company as well as the hotel company, since they were the principal owners of both and the insurance com-

pany had bonds of the hotel company in the amount of $3,000,000. There is here an absence of proof of fraudulent motive on the part of the plaintiff in error in making these loans.

We are of the opinion that it cannot be said with that conviction which arises from proof beyond a reasonable doubt that there is here proof of the guilt of plaintiff in error.

We are of the opinion, also, that the testimony of the People's witnesses concerning the value of the assets of the hotel company was incompetent. In civil cases the rule is that fair cash market value of property on the date under inquiry is its value for the highest and best use for which it is adapted, and evidence tending to show profits from the operation or volume of business, or contingencies of future profits, is too speculative and remote to be considered. (*Illinois Light and Power Co.* v. *Bedard,* 343 Ill. 618; *Forest Preserve District* v. *Hahn,* 341 id. 599; *River Park District* v. *Brand,* 327 id. 294; *West Chicago Park Comrs.* v. *Boal,* 232 id. 248; *Jacksonville and Southeastern Railway Co.* v. *Walsh,* 106 id. 253.) The method by which the witness Hornof arrived at his conclusion as to the value also included the use of a chart which he found in the assessor's office. Assessed value of land is incompetent in determining market value. *Lewis* v. *Englewood Elevated Railroad Co.* 223 Ill. 223; *American State Bank* v. *Butts,* 111 Wash. 612, 17 A. L. R. 170; 22 Corpus Juris, 178.

Insolvency, in a general sense, has been defined as an inability to answer, in the course of business, to the liabilities existing and capable of being enforced. It denotes an insufficiency of the entire assets and property of a debtor presently to pay his debts. But it was held in *People* v. *Gould,* 345 Ill. 288, and *People* v. *Clark,* 329 id. 104, where criminal liability arising out of insolvency was charged, that such insolvency exists only when the cash value of its assets "realizable within a reasonable time, in case of

liquidation by its proprietors, as ordinarily prudent persons would generally close up their business, is not equal to its liabilities, exclusive of its stock liabilities." This is but the sensible rule. The term "insolvent" as used in a criminal statute does not and should not mean insolvent in the limited sense of inability to pay presently the indebtedness in the ordinary course of business, but it means insolvency in the broad, general sense of a deficit in one's assets not realizable in cash available within a reasonable time, treating the assets as an ordinarily prudent person would generally conduct his business, under the same or similar circumstances, to pay his liabilities. A going concern which is more than paying its operating expenses, though not presently able to meet its charges on capital account, is not infrequently looked upon as justifying loans to carry it through, though if it were to be liquidated it would be shown insolvent. In other words, many a business has become flourishing and valuable because capital has been put in to help it in the earlier years of its existence, when, at the time of the loan, such concern could not realize enough from its assets to pay its liabilities. We are not commending the loans to the hotel company as sound investment, but whatever may have been the hope or confidence of plaintiff in error in the ultimate success of the hotel company, we are here considering fraud and criminal intent in these transactions. It is a far cry from a mistake in investment made in good faith to a felonious, fraudulent investment made for the purpose of converting the funds of the lender to the use of the accused. There is here no evidence of fraudulent intent. We are of the opinion that the record does not justify the verdict of guilty.

Other errors are assigned which it is unnecessary to consider.

The judgment is reversed.

*Judgment reversed.*